**Jean H. PELPHREY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 81–1503.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1981.

Decided March 22, 1982.

---

Judith M. Zeigler, Wayne Lustig, Virginia Beach, Va. (Guy, Cromwell, Betz & Lustig, Virginia Beach, Va., on brief), for appellant.

John F. Kane, Asst. U. S. Atty., Alexandria, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER, ERVIN, and CHAPMAN, Circuit Judges.

ERVIN, Circuit Judge:

Jean H. Pelphrey brought this action against the United States under the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* and 10 U.S.C. § 1089, for damages arising from a radical mastectomy performed at the Navy Regional Medical Center in the Philippines. Her claim for damages was predicated on both the alleged wrongful acts of the surgeon, which occurred in the Philippines, and the alleged wrongful acts of the Navy, which occurred in the United States.

The district court granted the government's motion to dismiss the claims arising from actions in the Philippines, holding that FTCA coverage does not extend to medical malpractice claims arising in a foreign country. The government's summary judgment motion on the claims arising from actions within the United States also was granted after Ms. Pelphrey failed to produce any legal or factual material to refute the government's affidavits.

On appeal, Ms. Pelphrey contends that the district court erred in granting the motion to dismiss because 10 U.S.C. § 1089 extended FTCA coverage to medical malpractice claims arising in foreign countries. She further contends that the district court improperly granted the motion for summary judgment because the government's affidavits were legally insufficient in that they

were submitted by interested parties. We find that these contentions are without merit and, accordingly, affirm.

## I.

On December 12, 1977, Ms. Pelphrey underwent a radical mastectomy at the United States Naval Regional Medical Center (NRMC) in the Philippines, during which extensive nerve damage occurred. She subsequently filed an action against the United States alleging that Dr. Thomas Street, a Navy surgeon, had negligently performed a radical mastectomy despite the fact that she and her husband had informed Dr. Street and various other staff personnel that she was to have only a modified mastectomy.

The claims arising from action in the Philippines were based on Ms. Pelphrey's contentions that Dr. Street: (1) performed the operation without her informed consent; (2) failed to exercise the degree of care and skill demonstrated in similar operations by other surgeons in the United States Navy Medical Corps; and (3) failed to terminate the operation and transfer her to a facility better equipped to handle mastectomies. The claims arising from action in the United States were based on her contentions that the Department of the Navy negligently failed to: (1) adequately train Dr. Street; (2) provide adequate staff and equipment for radical mastectomies; (3) inform NRMC or Dr. Street that NRMC was inadequately staffed and equipped to perform radical mastectomies; and (4) take proper precautions to insure that radical mastectomies were not performed at NRMC.

In support of its motion for summary judgment on the claims arising from the alleged negligent acts of the Navy, the United States submitted various affidavits including that of Captain Reinhardt H. Bodenbender, Director of the Medical Corps Division of the Navy Bureau of Medicine and Surgery and Captain Elmer L. Bing-

ham, Commanding Officer of NRMC from June 1976 to July 1978.

Captain Bodenbender, who is responsible for examining the qualifications of Navy doctors, testified that physicians are recruited into the Navy in accordance with specific guidelines established by various statutes, directives, and manuals and that a Navy doctor must have graduated from a medical school accredited by the American Medical Association (AMA) and completed at least one year of graduate medical education in an AMA accredited program. Bodenbender further testified that Dr. Street exceeded the minimum qualifications for commission into the Medical Corps.[1]

Captain Bingham stated that NRMC was fully accredited by the Joint Commission on Accreditation of Hospitals, that NRMC had adequate staff and equipment to perform mastectomies and that both modified and radical mastectomies were performed routinely at NRMC. This information was corroborated by the affidavit of Rear Admiral H. A. Sparks, Deputy Surgeon General and Deputy Chief for Headquarters Operations of the Navy Branch of Medicine and Surgery.

Because Ms. Pelphrey failed to produce any affidavits or other legal or factual material to contradict the statements contained in the government's affidavits, the district court granted summary judgment on the claims arising from the Navy's actions within the United States. Additionally, the district court dismissed the claims arising from actions in the Philippines on the ground that FTCA coverage does not extend to medical malpractice claims arising in a foreign country.

## II.

Section 2680(k) of title 28 of the United States Code provides that the FTCA does not apply to "any claim arising in a foreign country." This exemption has been applied to tortious conduct of foreign based

---

1. In 1972, Dr. Street graduated from George Washington Medical School, which was fully accredited by the AMA. He then completed an approved five-year program in general surgery at George Washington.

military personnel acting within the scope of their employment. *See Burna v. United States*, 240 F.2d 720 (4th Cir. 1957); *Meredith v. United States*, 330 F.2d 9 (9th Cir. 1964). Plaintiff contends, however, that 10 U.S.C. § 1089[2] was intended by Congress to extend FTCA coverage to medical malpractice claims arising in a foreign country. We disagree.

There is nothing in the language of § 1089 to suggest that Congress intended to expand coverage under the FTCA. The statute, as we read it, merely authorizes the Secretary of Defense to provide protection, either through indemnification or insurance, to foreign based military medical personnel who are subject to personal liability. *See Jackson v. Kelly*, 557 F.2d 735, 740 (10th Cir. 1977). Whereas military medical personnel acting within the United States are immune from personal liability because the FTCA is the *exclusive* remedy for military medical malpractice arising in the United States, *see* 10 U.S.C. § 1089(a), military medical personnel acting in a foreign country are personally liable for malpractice because the FTCA does not apply to "any claim arising in a foreign country." Thus, the need for special protection by foreign based medical personnel stems from the very fact that malpractice claims against them are exempt from the FTCA.

The legislative history of § 1089(f) supports this interpretation. It is stated in a Senate Report that "the purpose of this section again is to avoid liability being assessed against an individual medical personnel in a situation where the Federal Tort Claims Act would not be applicable. The Federal Tort Claims Act does not apply to

actions arising in a foreign country." S.Rep.No. 1264, 94th Cong., 2d Sess. 2, reprinted in [1976] U.S.Code Cong. & Ad. News, 4443, 4451.

Ms. Pelphrey's reliance on *Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977), to support her argument that § 1089 expanded FTCA coverage to malpractice claims arising in a foreign country, is inapposite. In *Jackson*, the plaintiff brought a personal medical malpractice action against an Air Force physician assigned to a military hospital in England. The physician argued that he was absolutely immune from suit because he was a federal official acting with discretion in the scope of his duty. Although the court rejected the argument that military medical personnel are absolutely immune from suit, the court found that military physicians acting outside the United States are protected from personal liability under 10 U.S.C. § 1089(f).[3] The court also noted that the plaintiff had no remedy under the FTCA because the action arose in a foreign country. *Id.* at 740, n.4.

There simply is no support for Ms. Pelphrey's contention that § 1089 extended FTCA coverage to medical malpractice claims arising in a foreign country in either the language or legislative history of § 1089. The district court, therefore, acted properly in dismissing the claims arising from actions in the Philippines.

### B.

Rule 56 of the Federal Rules of Civil Procedure provides that when a party supports a summary judgment motion with proper affidavits, the opposing party must

---

**2.** 10 U.S.C. § 1089 provides in pertinent part:
   (a) The remedy against the United States provided by § 1346(b) and 2672 of title 28 for damages for personal injury ... caused by the negligent or wrongful act or omission of any physician ... of the armed forces ... while acting within the scope of his duties ... shall hereafter be exclusive ...
   (f) The head of the agency concerned ... may ... hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury ... caused by such person's negligent ... act ... in the performance of medical ... functions ...

while acting within the scope of such person's duties if such person is assigned to a foreign country ... or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in § 1346(b) of title 28 ... for such damage or injury.

**3.** The physician in *Jackson*, however, was not protected from personal liability under ·§ 1089(f) because the statute, which was not made retroactive, was enacted after the alleged tortious conduct occurred.

set forth specific facts, in affidavits or otherwise, demonstrating that there is a genuine issue for trial. *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Allegations contained in the pleadings do not create an issue sufficient to overcome a summary judgment motion supported by affidavits. *Id.* In *Adams v. United States*, 302 F.Supp. 1147, 1150 (M.D. Pa.1969), for example, the court granted the United States' motion for summary judgment when the plaintiffs, in a federal tort claims action, challenged the United States' affidavits as conclusory but offered no counter-affidavits to contradict them. *Accord, Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980).

Although Ms. Pelphrey failed to produce affidavits or other material to refute the government's affidavits, she contends, on the basis of *Sartor v. Arkansas Natural Gas Corporation*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944), that summary judgment was improper because the government's affidavits were submitted by interested parties and, therefore, not legally sufficient to sustain a motion for summary judgment. While we recognize *Sartor* as viable precedent, we find that it is not controlling in this case.

In *Sartor*, a case involving a contract dispute, the sole issue was whether the market price of natural gas exceeded three cents per thousand cubic feet at the time and place of delivery. In support of its motion for summary judgment, the defendant submitted the affidavits of several expert witnesses including its vice president, its general manager, a lessee and producer of gas, a vice president of another gas pipeline company, three executive officers of several other gas producing companies, and a lawyer connected with the industry. All stated that the price of gas was below three cents per unit. In holding that the defendant was not entitled to summary judgment as a matter of law, the Court stated:

'If they have any probative effect, it is that of expressions of opinion by men familiar with the gas business.... But plainly opinions thus offered, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. This is true of opinion evidence generally, whether addressed to a judge or to a statutory board.'

*Id.* at 627, 64 S.Ct. at 728 (quoting *Dayton Power & Light Co. v. Public Utilities Commission*, 292 U.S. 290, 299, 54 S.Ct. 647, 652, 78 L.Ed. 1267 (1934)), and,

'The mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.'

*Id.* at 628, 64 S.Ct. at 729 (quoting *Sonnentheil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492 (1899)).

*Sartor*, however, is distinguishable from the present case in several important respects. First, the plaintiff in *Sartor*, unlike Ms. Pelphrey, had submitted an affidavit in response to defendant's motion for summary judgment. Second, a credibility issue was raised by defendant's affidavits in *Sartor* because a jury previously had decided the price issue against defendants. There has been no such prior litigation in the present case nor has Ms. Pelphrey presented any evidence raising a credibility issue. Finally, the court in *Sartor* characterized defendant's affidavits as "opinion evidence." *See* 321 U.S. at 627, 64 S.Ct. at 728. We do not believe that the affidavits submitted by the government in this case are aptly characterized as "opinion evidence." The affiants merely set forth the well documented facts that physicians are recruited into the Navy in accordance with specific statutory and regulatory standards, that Dr. Street's qualifications exceed the minimum standard, that NRMC is fully accredited by the Joint Commission on Accreditation of Hospitals, and that both modified and radical mastectomies are performed routinely at NRMC. We are at a loss to say what other informed sources the government could have called upon to demonstrate that it had met its duty of care in physician selection and hospital administration.

■ In light of these distinctions, we find that this case is controlled not by *Sartor*, but rather by the general principle that in order to overcome a motion for summary judgment supported by proper affidavits, the nonmoving party must submit affidavits or other material setting forth specific facts to show that there is a genuine issue for trial.[4] *See First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Because Ms. Pelphrey failed to present any evidence, in the form of affidavits, depositions, or otherwise, to refute the government's affidavits demonstrating that the Navy had complied with the standards regarding the qualifications of Dr. Street and the accreditation of NRMC, we hold that the district court properly granted the government's motion for summary judgment on the claims arising from actions within the United States.

### III.

For the foregoing reasons, we hold that the district court properly granted both the government's motion to dismiss the claims arising from conduct in the Philippines and the motion for summary judgment on the claims arising from conduct within the United States. Accordingly, the decision of the district court is affirmed.

AFFIRMED.

---

**4.** At oral argument, Ms. Pelphrey conceded that she had no factual evidence which she intended to present at trial to refute the government's position other than the assertions contained in her pleadings. While we can appreciate the onerous and expensive burden of conducting discovery abroad, we are unprepared to carve out an "onerous discovery" exception to the rule set forth in *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).