Paul HELLER, et al.

v.

The UNITED STATES, et al.

Civ. A. No. 84–3043.

United States District Court,
E.D. Pennsylvania,
Civil Division.

March 21, 1985.

---

Robert Mozenter, Michael S. Durst, Mozenter, Molloy & Durst, Philadelphia, Pa., for plaintiffs.

Susan Dein Bricklin, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

SCIRICA, District Judge.

Plaintiff has brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and the federal medical malpractice immunity statute, 10 U.S.C. § 1089. Plaintiff is seeking compensatory and punitive damages in excess of five million ($5,000,000) dollars for the wrongful death of his wife, Gail Simpson Heller, from numerous defendants including the United States, the United States Air Force Regional Medical Center Clark (PACAF) (hereinafter "the Hospital"), as well as the doctors involved in her case. The claims against the named defendants are based on diversity jurisdiction while the claims against the United States are based upon the above-cited statutes. Defendant, Unit-

ed States, has filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Plaintiff, Paul Heller, enlisted in the United States Air Force, in July 1980. After assignments in Texas and Illinois, plaintiff and his wife were stationed at Clark Air Force Base in the Republic of the Phillipines. On July 5, 1981, Mrs. Heller gave birth to a son at the Clark Medical Center. She was assisted in the delivery room by Dr. Mai Diaz and, thereafter, laboratory tests were performed by defendants Moffet and Brockett in the microbiology department of the hospital. Mrs. Heller was discharged from the hospital on July 8, 1981 and returned to the Clark Medical Center for her six week post-partum check-up on August 27, 1981.

On October 15, 1981, Mrs. Heller appeared at the emergency room of the hospital complaining of a swollen breast. At that time, she was diagnosed as having mastitis of the right breast. On December 18, 1981, Mrs. Heller went to the primary care clinic of the hospital complaining of swollen eyes. She was seen at the gynecology clinic at the hospital on January 5, 1982, for a pregnancy test and again on January 8, 1982, as she was experiencing vaginal bleeding. At that time, a pelvic examination was performed by the hospital doctors. Although the results of the examination were negative, Mrs. Heller continued to experience weight loss, nausea and other problems. The Hellers left the Phillipines and on January 29, 1982, Mrs. Heller was admitted to Bucks County Hospital where a biopsy was performed. She was diagnosed as having choriocarcinoma (cancer of the placenta) with metastitis and on February 2, 1982, was transferred to the Hospital of the University of Pennsylvania for chemotherapy. On March 3, 1982, Mrs. Heller died from overwhelming carcinomatosis and sepsis.

Defendant, United States, moved to dismiss this action.[1] The United States argues that since this action arose in a for-

---

1. I have jurisdiction in this matter based on 28      U.S.C. § 1346(b).

eign country, the Phillipines, the Federal Tort Claims Act does not apply, and the Government retains its sovereign immunity.

■ It is clear that the Federal Tort Claims Act (hereinafter "FTCA") does not apply to "any claims arising in a foreign country." 28 U.S.C. § 2680(k). In *United States v. Spelar,* 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949), the Supreme Court held that "the coverage of the Federal Tort Claims Act was geared to the sovereignty of the United States." *Id.* at 219, 70 S.Ct. at 11. The court then enunciated the test to determine whether a claim arose in a foreign country: whether the "territory [was] subject to the sovereignty of another nation," *Spelar, supra* at 217, 70 S.Ct. at 10 and whether the United States was to be subjected to liability based upon the laws of a foreign power. *Id.* at 221, 70 S.Ct. at 12. I find that both of these requirements have been met in this case.

The Clark Air Base is under Phillipine sovereignty as a result of an agreement reached between the United States and the Republic of the Phillipines. This agreement, enacted on January 7, 1979, provided that:

1. The bases covered by this Agreement are Phillipine military bases and shall be under the command of Phillipine Base Commanders ...

3. In the performance of their duties, the Base Commanders and United States Commanders shall be guided by full respect for Phillipine sovereignty on the one hand and the assurance of unhampered United States military operations on the other.

Agreement Between the United States of America and the Republic of the Phillipines Concerning Military Bases of 1947, as amended January 7, 1979, 30 U.S.T. 863, 879, T.I.A.S. No. 9224.

This agreement for the return of these military bases in the Phillipines was the culmination of several years of negotiations. It is clear that Phillipine sovereignty extended to Clark Air Base during the relevant time period which gave rise to this action.

The second prong of the *Spelar* test has been met as the FTCA requires that liability of the United States be imposed "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b), 2672.[2] Since the alleged malpractice occurred in the Philippines while Mrs. Heller was being treated at Clark Air Base, the United States would be held to the laws of the Republic of the Phillipines. Because both requirements have been met, the Phillipines qualifies as a foreign country.

■ A claim presented by or on behalf of dependents of United States military personnel who allege negligent treatment at a United States military hospital abroad, still falls within the foreign country exception to the FTCA. See *Pelphrey v. United States,* 674 F.2d 243 (4th Cir.1982); *Manemann v. United States,* 381 F.2d 704 (10th Cir.1967); *Grunch v. United States,* 538 F.Supp. 534 (E.D.Mich.1982).

■ The United States retains its sovereign immunity unless it consents to be sued. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). If the FTCA does not apply, the United States retains its sovereign immunity unless some other statute waives it.

The plaintiff contends that in medical malpractice cases, the United States waived its sovereign immunity by the adoption of the medical malpractice statute, 10 U.S.C. § 1089.

---

**2.** As the United States Supreme Court stated in *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), "[w]e believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act."

Specifically, the plaintiff relies on *Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977), a medical malpractice case involving a military physician stationed at a United States Air Force Hospital in England, for the proposition that Section 1089(f) of the Federal Medical Malpractice Immunity Statute immunizes physicians from personal liability and shifts the assumption of liability to the appropriate agency of the United States.

Section 1089(a) of the Federal Malpractice Immunity Statute, 10 U.S.C. § 1089(a), provides that the exclusive remedy for those injured by military medical personnel practicing within the United States is to substitute the United States as a defendant.

> The remedy against the United States provided by § 1346(b) and 2672 of Title 28 for damages for personal injury ... caused by the negligent or wrongful act or omission of any physician ... of the armed forces ... while acting within the scope of his duties ... shall hereinafter be exclusive ...

■ A review of the legislative history of the federal medical malpractice immunity statute indicates that Congress' stated purpose was to "provide protection from individual liability to certain medical personnel while acting within the scope of their official duties. In short, defense medical personnel would be immunized from malpractice suits." S.Rep. No. 94–1264, 94th Cong., 2d Sess. 1 *reprinted in* [1976], U.S.Code Cong. & Ad.News, 4443. It is clear that military doctors practicing in military hospitals within the United States, are immune from liability.

For military physicians who are practicing in a foreign country, 10 U.S.C. § 1089(f) provides:

> The head of the agency concerned *may*, to the extent that the head of the agency concerned considers appropriate, *hold harmless or provide liability insurance* for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties *if such person is assigned to a foreign country* ... or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damages or injury. (emphasis added).

Interpreting Section 1089(f), the Court in *Jackson* said:

> [t]he purpose of the statute, is to provide a method for the assumption by the government of responsibility for damage claims against its military medical personnel arising from medical care given in foreign countries in the scope of their employment. *Behind it is the desire to protect military medical personnel from the ever-present danger of personal liability and relieve them of the expense of supplying private malpractice insurance, while preserving a means for compensating malpractice victims for their injuries.* *Jackson, supra,* at 740.[3]

The legislative history of section 1089(f) indicates that its purpose was to:

> authorize the appropriate Secretary to hold harmless or provide liability insurance for medical personnel described in subsection (a). The purpose of this section again is to avoid liability being assessed against an individual medical personnel in a situation where the Federal Tort Claims Act would not be applicable. The Federal Tort Claims Act does not apply to actions in a foreign country ... Subsection (f) authorizes the appropriate Secretary to provide protection through indemnification or insurance to medical personnel in those situations. The Com-

---

**3.** The *Jackson* decision, however, was rendered prior to Section 1089(f) taking effect and the court declined to grant the military physician official immunity. The *Jackson* court also stated that the plaintiff had no remedy under the Federal Tort Claims Act because the action arose in a foreign country.

mittee would expect that any payments made under the authority of subsection (f) would be payable from the appropriation for salaries and expenses. 1976 U.S. Code Cong.Ad.News at 4451.

In *Pelphrey, supra,* a claim against a Navy surgeon stationed at the United States Naval Regional Medical Center (NRMC) in the Phillipines for negligently performing a radical mastectomy was instituted in the Eastern District of Virginia. The United States was dismissed from that suit on the ground that FTCA coverage does not extend to medical malpractice claims arising in a foreign country.

The court in *Pelphrey* interpreted Section 1089(f) as providing special protection for foreign based medical personnel since medical malpractice claims against them do not fall within the FTCA.

Whereas military medical personnel acting within the United States are immune from personal liability because the FTCA is the exclusive remedy for military medical malpractice arising in the United States, see 10 U.S.C. § 1089(a), military medical personnel acting in a foreign country are liable for malpractice because the FTCA does not apply to 'any claim arising in a foreign country.' Thus, the need for special protection by foreign based medical personnel stems from the very fact that malpractice claims against them are exempt from the FTCA. *Pelphrey, supra* at 246.

■ I agree with this analysis and hold that the FTCA does not apply to this case and that the United States retains its sovereign immunity. The United States, therefore, will not be substituted as a party in this matter.

It must be remembered that the purpose of Section 1089(f)

is not to create an exception to the immunity from malpractice actions created by Section 1089(a). The purpose of subsec-

tion (f) is to enhance protection against malpractice actions in circumstances where local law allows recovery against military doctors. The subsection mentions two such circumstances: when a military physician is (1) assigned to a foreign country or (2) assigned to other than a federal department, e.g., a private hospital. In such circumstances the doctor may not be covered by the Federal Tort Claims Act and the Secretary of Defense is authorized to provide indemnification or insurance. *Baker v. Barber,* 673 F.2d 147, 149–150 (6th Cir.1982).

In view of the statute and opinions from other circuits, a military physician assigned to a foreign country is not granted immunity under subsection (f), but rather is to be insured or indemnified by the government in the event of a malpractice suit.

In § 1089(f), Congress provided that the government "may, to the extent that the head of the agency concerned considers appropriate, hold harmless or provide liability insurance" for medical personnel.[4] Does the use of the term "may" expose military personnel to personal liability and effectively deprive injured plaintiffs of a remedy? I believe that Congress granted discretion to the agency head only to preclude the government from being held as an insurer or indemnitor in baseless lawsuits and to give it authority to evaluate claims. To read this section otherwise would render it a nullity.

I am presented with a case in which the FTCA does not apply, and where the alleged malpractice occurred in the Phillipines. The plaintiff's remedy, therefore, appears to be twofold: (1) he may bring a suit in the Republic of the Phillipines against the individually named defendants or (2) proceed with the administrative claim against the Air Force under the Military Claims Act, 10 U.S.C. §§ 2731–2737.

---

**4.** In *Afonso v. City of Boston,* 587 F.Supp. 1342 (D.Mass.1984), the court held that where a military physician is not immune from individual liability under the malpractice immunity statute by reason of § 1089(f), "the statute provides that the government *shall* indemnify any physician for acts performed. . . .". *Id.* at 1345. The court gave no explanation for its substitution of the term "shall" for the term "may".

The United States filed an affidavit of Colonel Henry G. Green, Chief of the Claims and Tort Litigation Staff of the Judge Advocate General which recites that his office will be responsible for this claim upon dismissal, and will determine whether or not it merits payment under the Military Claims Act. Colonel Green states that his review will consist of all of the evidence plaintiff wishes to submit to his office within sixty (60) days after dismissal of this action and will not be limited to the Air Force's evidence developed to defend the suit. Finally, Colonel Green states that there must be a credible showing of a failure to meet the appropriate standard of care in this matter.

Since I have found that the FTCA does not apply to this action and that § 1089(f) does not provide immunity to military medical personnel which requires the substitution of the United States as a party, I will dismiss this matter.