776 F.2d 92
 HELLER, Paul, As Widower and as Parent and Natural Guardian
of Jacob Heller, a minor, and Paul Heller, As
Administrator of the Estate of Gail
Simpson Heller, Deceased
v.
The UNITED STATES and United States Air Force Regional
Medical Center Clark (PACAF) Phillipines, and Bettye H.,
Ltc. USAF; Hipps, Kimberly D.; Morris, Francis M., Capt.
USAF; Yap, Dr. Rose; Diaz, Mai C., M.D.; Villano,
Mercedes P., Major, USAF; Jolliff, Reade B., Capt. USAF;
Moffett, Glen W., Capt., USAF; Conatser, David, Major,
USAF, as Agent, Servants, Workmen and/or Employees of the
United States.
Appeal of Paul HELLER, Appellant.
 No. 85-1196.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 17, 1985.
Decided Nov. 5, 1985.
 
 Michael S. Durst (argued), Robert B. Mozenter, Mozenter, Molloy & Durst, Philadelphia, Pa., for appellant.
 Major Michael L. Fox (argued), Dept. of the Air Force, Susan Dein Bricklin, Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Philadelphia, Pa., for appellees.
 Before ADAMS and HUNTER, Circuit Judges, and FISHER,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Appellant Paul Heller filed this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 1346(b), 2671-80 (1982), seeking compensation and punitive damages for the wrongful death of his wife, Gail Simpson Heller. Heller alleges that the United States is liable for the negligent medical treatment his wife received at Clark Air Force Base, Republic of the Philippines. The District Court for the Eastern District of Pennsylvania dismissed Heller's complaint for lack of subject matter jurisdiction under the FTCA. We affirm.
 
 I.
 
 2
 Paul Heller enlisted in the United States Air Force in July, 1980 and was later stationed, accompanied by his wife, at Clark Air Force Base, Republic of the Philippines. On April 5, 1981, Mrs. Heller received pre-natal care at the Ob-Gyn Clinic of the United States Air Force Regional Medical Center at Clark Air Base. On July 5, 1981, Mrs. Heller gave birth to a son at Clark Medical Center. Laboratory tests were performed at that time. Mrs. Heller was discharged from Clark Medical Center on July 8, 1981. Thereafter, she returned to Clark Medical Center for care on the following dates: August 27, 1981 (six week post-partum check-up), October 5, 1981 (infected right breast), December 18, 1981 (eye infection), January 5, 1982 (pregnancy test), and January 8, 1982 (vaginal bleeding).
 
 
 3
 The Hellers left the Philippines, and returned to their home in Pennsylvania. On January 29, 1982, Mrs. Heller was admitted to Lower Bucks Hospital, in Bristol, Pennsylvania, where a biopsy was performed. As a result of the biopsy, she was diagnosed as suffering from choriocarcinoma (cancer of the placenta) with metastitis, and was transferred to the Hospital of the University of Pennsylvania for chemotherapy and radiation treatment on February 2, 1982. On March 3, 1982, Mrs. Heller died of cancer.
 
 
 4
 On November 1, 1982, Heller filed a claim for thirty thousand dollars under the Military Claims Act, 10 U.S.C. Secs. 2731-37 (1982), with the Staff Judge Advocate at McGuire Air Force Base, New Jersey for personal injury and wrongful death stemming from the failure of Air Force personnel to diagnose Mrs. Heller's cancer.[1] On June 22, 1984, Heller filed a complaint in the United States District Court for the Eastern District of Pennsylvania, seeking five million dollars in compensatory and punitive damages from the United States, Clark Medical Center, and ten United States Air Force employees who were involved in Mrs. Heller's treatment at the Center for the wrongful death of Gail Heller.[2] Heller's complaint alleged jurisdiction based on the FTCA and diversity of citizenship.
 
 
 5
 On March 21, 1985, 605 F.Supp. 144 (D.C.Pa.), the district court granted the United States' motion to dismiss. The court decided that it lacked subject matter jurisdiction over the United States because the case fell within the "foreign country" exception to the FTCA, Sec. 2680(k). The court rejected Heller's contentions that the United States had waived its sovereign immunity by enacting the Medical Malpractice Immunity Act, 10 U.S.C. Sec. 1089 (1982) (the "Act"), and that the Act required the court to substitute the United States in the place of the individual defendants.
 
 II.
 
 6
 Heller raises three issues on appeal. Heller contends that the district court erred as a matter of law by dismissing his complaint for lack of subject matter jurisdiction pursuant to the FTCA's foreign country exception. Heller also claims that the district court erred as a matter of law in finding that Sec. 1089(f) of the Medical Malpractice Immunity Act does not waive the United States' sovereign immunity and require the substitution of the United States. Finally, Heller asserts that the foreign country exception to the FTCA is unconstitutional because it denies United States citizens equal protection under the law, due process, and access to the courts, arguments that Heller failed to raise before the district court. We will address each issue in turn.
 
 
 7
 We cannot agree with Heller that the FTCA gives federal courts jurisdiction over this action. In United States v. Mitchell, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), the Supreme Court reaffirmed the principles that " '[t]he United States, as sovereign, is immune from suit save as it consents to be sued' " and that any "waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " Id. at 538, 100 S.Ct. at 1351, citing United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), and United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Clear congressional consent to suit for torts committed within the United States by its employees is found in the FTCA.
 
 
 8
 In FTCA Sec. 2680(k), however, Congress expressly withheld its consent to suit from "[a]ny claim arising in a foreign country." The Supreme Court first addressed the scope of the foreign country exception in United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3 (1949), where the Court held that the administratrix of a citizen allegedly killed by the negligent operation of a Newfoundland air base leased by the United States from Great Britain could not bring suit against the United States under the FTCA. In finding that the foreign country exception applied, the Court observed that Congress "identified the coverage of the Act with the scope of United States sovereignty" because although "Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power." Spelar, 338 U.S. at 221, 70 S.Ct. at 12. From the Court's discussion, it appears that two conditions must exist before the foreign country exception obtains: (i) that the tort occurs in a jurisdiction outside United States sovereignty, and (ii) that the United States is subject to liability based upon the foreign law. See Beattie v. United States, 756 F.2d 91, 97-98 (D.C.Cir.1984) (concluding that Sec. 2680(k) is not a bar to jurisdiction over suits "arising at least in part outside the United States and in areas where 'there is no theoretical justification for application of foreign law' " quoting In Re "Agent Orange" Product Liability Litigation, 580 F.Supp. 1242, 1254 (E.D.N.Y.1984)). Appellate courts faced with this issue uniformly have held that this exemption applies to the tortious conduct of foreign based military personnel acting within the scope of their employment. See Pelphrey v. United States, 674 F.2d 243 (4th Cir.1982); Manemann v. United States, 381 F.2d 704 (10th Cir.1967); Meredith v. United States, 330 F.2d 9 (9th Cir.1964); Burna v. United States, 240 F.2d 720 (4th Cir.1957).
 
 
 9
 Although the United States retained sovereignty over its military bases in the Philippine Islands after World War II, see Treaty of General Relations Between the United States of America and the Philippines, July 4, 1946, United States--Philippines, art. I, T.I.A.S. No. 1568, 61 Stat. 1174 (1947); Agreement Between the United States and the Republic of The Philippines Concerning Military Bases, art. I, T.I.A.S. No. 1175, 61 Stat. 4019, 4020 (1947), in 1979, the United States and the Republic of the Philippines amended the latter agreement to provide for the return of Philippine sovereignty over these military bases.[3] Appellant concedes that this agreement explicitly recognizes Philippine sovereignty over Clark Air Force Base. Appellant suggests, however, that because the agreement also allows the United States to retain command and control over its facilities, personnel, equipment, and material, that Philippine sovereignty over Clark Air Force Base is merely formal, and that claims arising at the facility should not be governed by foreign law.
 
 
 10
 Because international agreements qualify Philippine jurisdiction over United States military bases in the Philippines, appellant contends that the tort did not occur in a foreign country. We cannot accept Heller's hornbook definition of sovereignty as the "supreme, absolute, and uncontrollable power by which any independent state is governed." Heller would have us believe that sovereignty is an "all or nothing" concept, and that if the United States exercises any jurisdiction over its nationals in foreign countries, foreign sovereignty by definition could not exist. We disagree. Specifically, this argument ignores both the plain language of the amendment and the clear statements of the parties to the contrary in the preparatory documents.[4] More generally, this argument ignores the distinction between sovereignty, or the legal personhood of the nation, and jurisdiction, or the rights and powers of the nation over its inhabitants. See I. Brownlie, Principles of Public International Law, 99 (1966). It is uncontrovertible that nations, even though they are recognized as full members of the international community, must modify their internal affairs as a result of their participation in the international community, often in accord with treaty obligations. See L. Henkin, How Nations Behave, 17, 229 (2d ed. 1979). Thus it is reasonable that torts occurring on American military bases are barred by the foreign country exception, despite the fact that the enforcement authority on base is American. See Broadnax v. United States Army, 710 F.2d 865 (D.C.Cir.1983) (per curiam) (claim arising out of medical malpractice in Army hospital in West Germany barred by the foreign country exception to the FTCA); Burna, 240 F.2d at 721 (although the applicable treaty granted Japan only "residual sovereignty" over Okinawa, Okinawa held to be a foreign country for the purposes of the FTCA).
 
 
 11
 Like the plaintiff in Pelphrey, Heller argues that Congress intended to extend the FTCA to medical malpractice suits arising in foreign countries through the enactment of the Medical Malpractice Immunity Act,[5] and therefore that foreign law does not control. Indeed, on the facts, this action appears to be quite similar to Pelphrey, where the court dismissed a suit against the United States brought under the FTCA for the allegedly negligent conduct of surgeons at the Navy Regional Medical Center in the Philippines. Heller's contention that the Act gives federal courts jurisdiction over this suit and requires the substitution of the United States as the defendant in this action is not well founded. Section 1089(a) provides that the exclusive remedy for those injured by military medical personnel practicing within the United States is to substitute the United States for the individual defendants pursuant to the provisions of the FTCA. On the other hand, for military personnel practicing in a foreign country, Sec. 1089(f) provides that: "[t]he head of the agency concerned may, ... hold harmless or provide liability insurance for any person described in subsection (a)" (emphasis added). Section 1089(f) is not a grant of jurisdiction to federal courts to hear suits arising from foreign torts committed by United States military medical personnel. Unlike their stateside counterparts, military personnel abroad may be held personally liable under foreign law. Section 1089(f) merely provides that in the event that medical personnel are held liable under foreign tort law, the Secretary of Defense is permitted to indemnify them.[6] The Act thus eliminates a significant disincentive to foreign service by medical personnel by negating the potentially disastrous effect of the foreign country exception on their financial welfare. Consequently, we find nothing in the Act related to an express consent to suit, and agree with the Fourth Circuit that the Act "authorizes the Secretary of Defense to provide protection, either through indemnification or insurance, to foreign based military medical personnel who are subject to personal liability." Pelphrey, 674 F.2d at 246; see Jackson v. Kelly, 557 F.2d 735, 740 & id., n. 4 (10th Cir.1977).[7]
 
 
 12
 Heller's final argument, that the foreign country exemption to the FTCA is unconstitutional, is raised for the first time on appeal. We generally decline to consider such issues. Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976); Sachanko v. Gill, 388 F.2d 859, 861 (3d Cir.1968); Tromza v. Tecumseh Products Co., 378 F.2d 601, 604 n. 4 (3d Cir.1967). However, even if this argument were properly before the court, we believe that we would find no merit in Heller's constitutional assertions. In essence, the argument raises a constitutional challenge to Congress' selective invocation of sovereign immunity, and as such cannot succeed. Congress' power to remove a right to sue the government is "absolute." "This power is inherent in the status of the Government as a sovereign." Lynch v. United States, 292 U.S. 571, 574, 54 S.Ct. 840, 841, 78 L.Ed. 1434 (1934). Thus, "statutes either denying or withdrawing judicial remedies against the United States in respect to claims against it are constitutional." Thompson v. Whittier, 185 F.Supp. 306, 312 (D.D.C.1960) (three-judge court), appeal dismissed, 365 U.S. 465, 81 S.Ct. 712, 5 L.Ed.2d 704 (1961).
 
 
 13
 The argument cannot withstand even conventional constitutional analysis. The government's desire to avoid application to it of the vagaries of foreign law is an important and rational consideration distinguishing such cases from its routine assumption of tort liability in federal courts.
 
 
 14
 Finally, we note that if Heller chooses to pursue a remedy under the Military Claims Act, the exclusivity of that remedy also is not a denial of due process. It is well-recognized that the administrative claims procedure is an appropriate balance between individual rights and Congress' desire to avoid the disruptive effect that judicial review may have on "the prompt and authoritative administrative settlement of claims" against the military. Towry v. United States, 459 F.Supp. 101, 108 (E.D.La.1978), aff'd, 620 F.2d 568 (5th Cir.1980), cert. denied, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); see Labash v. United States, 668 F.2d 1153, 1156 (10th Cir.), cert. denied, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982).III.
 
 
 15
 The district court observed that Heller possesses two distinct remedies to seek relief for the alleged wrongful death of his wife: Heller can sue the individual defendants under Philippine tort law in the Republic of the Philippines or proceed with his claim under the Military Claims Act. These appear to be the only remedies Congress intended to afford those injured by the tortious conduct of United States military medical personnel abroad when it enacted Sec. 1089(f). That neither procedure may be as expedient as suing the United States in federal court does not permit us to exercise jurisdiction over this action. Accordingly, we will affirm the judgment of the district court.
 
 
 
 *
 Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The Air Force suspended its consideration of Heller's claim pending the outcome of this appeal
 
 
 [2]
 Heller was unable to effect service over any of the individual defendants
 
 
 [3]
 Annex III to the amendment provides in relevant part:
 
 
 [1]
 The bases covered by this Agreement are Philippine military bases and shall be under the command of Philippine Base Commanders
 
 
 [2]
 The United States Commanders shall exercise command and control over the United States Facility, over United States military personnel, over civilian personnel in the employ of the United States Forces, over United States equipment and material, and over military operations involving United States Forces
 
 
 [3]
 In the performance of their duties, the Base Commanders and United States Commanders shall be guided by full respect for Philippine sovereignty on the one hand and the assurance of unhampered United States military operations on the other
 Agreement Between the United States of America and the Republic of the Philippines Concerning Military Bases, March 14, 1947, as amended January 7, 1979, 30 U.S.T. 863, 879, T.I.A.S. No. 9224.
 
 
 [4]
 See Joint Communique of President Marcos and President Ford of December 7, 1975, 30 U.S.T. at 866-67 ("negotiations on the subject of the United States use of Philippine military bases should be conducted on the clear recognition of Philippine sovereignty"); Joint Statement of President Marcos and Vice President Mondale of May 4, 1978, 30 U.S.T. at 868 (amendments to the military bases agreement will reflect the principle that "[t]he United States reaffirms that Philippine sovereignty extends over the bases")
 
 
 [5]
 10 U.S.C. Sec. 1089 provides in pertinent part:
 (a) The remedy against the United States provided by Sec. 1346(b) and 2672 of title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedic or other supporting personnel ... of the armed forces ... while acting within the scope of his duties ... shall hereafter be exclusive of any other civil action or proceeding ...
 (f) The head of the agency concerned may, ... hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical ... or related health care functions (including clinical studies) ... while acting within the scope of such person's duties if such person is assigned to a foreign country ... or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury.
 28 U.S.C. Sec. 2672 grants the head of each federal agency, in accord with applicable regulations, the power to consider and settle claims for money damages against the United States stemming from personal injury or wrongful death caused by the negligence of United States employees. Section 1346(b) of the same title gives district courts jurisdiction over civil suits brought under the FTCA.
 
 
 [6]
 The legislative history of the Medical Malpractice Immunity Act states, in pertinent part:
 The primary effect of subsection (a) is to make the Federal Tort Claims Act the exclusive remedy for specified torts committed by certain medical personnel. Suits for damages for personal injury against such medical personnel in their individual capacities are precluded. The sole remedy would be against the United States.
 ....
 Subsection (f) would authorize the appropriate Secretary to hold harmless or provide liability insurance for medical personnel described in subsection (a). The purpose of this section again is to avoid liability being assessed against an individual medical personnel in a situation where the Federal Tort Claims Act would not be applicable. The Federal Tort Claims Act does not apply to actions arising in a foreign country.... Subsection (f) authorizes the appropriate Secretary to provide protection through indemnification or insurance to medical personnel in those situations.
 S.Rep. No. 1264, 94th Cong., 2d Sess. 8, 10, reprinted in [1976] U.S.Code Cong. & Ad.News, 4443, 4450-51.
 
 
 [7]
 Appellant's argument that the regulations promulgated under the Military Claims Act support the substitution of the United States as defendant also lacks merit. To begin, government regulations alone, without the express intent of Congress, cannot waive sovereign immunity. Moreover, appellant's construction of the regulations is somewhat strained. 32 C.F.R. Sec. 61.4(b) (1984), enacted under Sec. 1089(f), simply states that the procedures for determining costs, settlements, and judgments under Sec. 1089(f) are set forth in the Military Claims Act, 10 U.S.C. Sec. 2733. 32 C.F.R. Sec. 842.51 (1985), enacted pursuant to the Military Claims Act, sets forth the procedures for evaluating claims arising in foreign countries. The regulations provide guidance for assessing liability and damages for the purposes of settlement of these claims by the Secretary of Defense under the Military Claims Act. They do not sanction the substitution of the United States as defendant, but rather define the procedures that would be used should Heller decide to pursue his remedy under the Military Claims Act