**Joanne BEMBENISTA and Marcus Bembenista, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 86–1417.**

United States District Court, District of Columbia.

Jan. 12, 1988.

Richard G. Moore, Springfield, Va., for plaintiffs.

Wayne P. Williams, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

On three occasions in late January, 1983, plaintiff Joanne Bembenista was sexually molested by a medical technician assigned to care for her while she was under treatment for diabetic complications at Walter Reed Army Medical Center ("WRAMC"), in Washington, D.C., a military hospital owned and operated by defendant United States.[1] Mrs. Bembenista, the wife of an Army captain, was semi-comatose and disoriented at the time (a consequence, she now alleges, of her mis-medication by other attending medical personnel). The Bembenistas timely presented WRAMC with administrative claims for compensation by each of them in January, 1985, which were finally rejected by the Army's Office of the Judge Advocate General the following November. They filed this action under the Federal Tort Claims Act ("FTCA"), 28 U.S. C. §§ 1346(b) and 2671 *et seq.*, in May of 1986. The United States has moved to dismiss, or for summary judgment of dismissal, for failures of subject matter jurisdiction and to state claims upon which relief can be granted. For the reasons set forth below the motion will be granted.

1. The technician was later tried by general court-martial, convicted of sodomy and indecent assault, and sentenced to prison.

2. The FTCA provides that the United States shall be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b), 2672.

I.

The FTCA, of course, operates as a waiver of the United States' sovereign immunity for certain tort actions against it, excepting, however, *inter alia*, "any claim arising out of assault [or] battery." 28 U.S.C. § 2680(h). The Bembenistas' "first amended complaint" sets forth their respective claims in voluble detail, and a profusion of "counts," variously characterizing their causes of action as being for medical malpractice, breach of implied contract (to provide proper medical care), invasion of privacy, negligent retention and supervision (of a medical technician known to be mentally disturbed), negligent breach of a "special duty of protective care," and loss of consortium, all of which, they say, are actionable wrongs cognizable under the law of the District of Columbia.[2] The United States asserts that the gravamen of each and every "count" is, nevertheless, the medical technician's criminal assault and battery upon Mrs. Bembenista, as to which it retains its sovereign immunity under § 2680(h).

While the Bembenistas' administrative claims were pending the Supreme Court decided the case of *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), denying recovery under the FTCA for the wrongful death of an Army private murdered by a fellow serviceman while off duty and away from his military post. The *Shearer* plaintiff, decedent's personal representative, contended the Army had been negligent in assigning the slayer, who had once before been convicted of homicide, to her decedent's duty station without exercising due care to "control" him or to warn others that he was "at large." With one justice not voting, the Court unanimously held the *Feres* doctrine[3] to bar the action, but in *obiter dicta* in which four justices joined, also said:

3. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) held that military personnel may not maintain FTCA actions for injuries which "arise out of or are in the course of activity incident to [military] service." *Id.*, at 146, 71 S.Ct. at 159. *See also United States v. Johnson*, —— U.S. ——, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.

*Id.* at 55, 105 S.Ct. at 3042. (Emphasis in original).

Since *Shearer* several circuit courts of appeal have found the *dictum* a clear indication that a "semantical recasting of events" to charge an assault- or battery-inflicted injury in terms of negligence to make it cognizable under the FTCA nevertheless encounters the bar of § 2680(h). In *Johnson by Johnson v. United States*, 788 F.2d 845 (2d Cir.1986), the court held a district court to be without jurisdiction to entertain an FTCA action charging the government with negligence in failing to supervise a letter carrier who committed a sexual assault on an infant, observing that the four justices who did not join in the *Shearer dictum* also did not dissent from it. *Id.* at 850. In *Thigpen v. United States*, 800 F.2d 393 (4th Cir.1986), the court affirmed dismissal of an FTCA case on behalf of two minor girls who were sexually molested by a Navy corpsman while recuperating from surgery in a naval hospital, finding the *Shearer* analysis "persuasive," whether or not binding. *Id.* at 395. And in *Garcia v. United States*, 776 F.2d 116 (5th Cir.1985), affirming dismissal of an FTCA action alleging negligent supervision of a military recruiter who purportedly had sex with a prospective recruit, the court asserted that it could not ignore the "strong signal" represented by *Shearer*. *Id.* at 118.[4]

The Bembenistas contend, however, that § 2680(h)'s exclusion of assaults (and cer-

tain other intentional torts) from the FTCA's otherwise general waiver of sovereign immunity for negligence is itself subject to an exception when a so-called "assault" occurs in a medical context. Among the several statutes Congress has enacted to relieve government medical personnel of personal liability for their professional errors[5] is found one which is applicable to the U.S. Armed Forces generally, namely, the Medical Malpractice Immunity Act, 10 U.S.C. § 1089, subparagraph (e) of which provides that, "for purposes of this section," § 2680(h) of the FTCA "shall not apply to any cause of action arising out of a negligent or wrongful act or omission in the performance of medical, dental, or related health care functions...." According to the Bembenistas, the plain language of § 2680(h), the meaning of which was so apparent to the plurality in *Shearer* and the several lower courts to have followed it, is just as plainly modified by § 1089(e) of Title 10. Congress has declared, they say, that even physical contacts between a government health care provider and a patient which the former intends, and the latter finds, to be harmful and offensive, are nevertheless actionable under the FTCA notwithstanding § 2680(h).

The only case which appears to have addressed the relationship between 28 U.S.C. § 2680(h) and 10 U.S.C. § 1089(e) is *Doe v. United States*, 769 F.2d 174, 175 (4th Cir.1985), in which the court held the government's assault immunity remained intact and barred a suit by a military dependent who alleged that she had been a victim of unspecified "deviant sexual practices" upon her by an Air Force social worker ostensibly "treating" her for "blackouts." She not having consented to his ministrations, the court said, they constituted § 2680(h) "assaults" upon her; alternatively, they had not occurred "within the scope of the [social worker's] duties or employment," but, were, rather, for his

---

**4.** *See also Sheridan v. United States*, 823 F.2d 820 (4th Cir.1987); *Hoot v. United States*, 790 F.2d 836 (10th Cir.1986). *See Marbley v. United States*, 620 F.Supp. 811 (D.D.C.1985).

**5.** E.g., 42 U.S.C. § 233(a) (Public Health Service); 42 U.S.C. § 2458a (NASA); 38 U.S.C. § 4116(a) (Veteran's Administration).

"personal gratification." *Id.* at 175.[6] Either rationale would, of course, operate to bar the Bembenistas' suit here.

█ It is manifest, however, from both the legislative history of 10 U.S.C. § 1089, and cases construing FTCA exceptions in analogous contexts, that the *only* purpose of the Medical Malpractice Immunity Act and similar statutes was to relieve government health practitioners of individual personal liability to their patients should they be harmed, by substituting the government as the sole party answerable, if anyone, for their unintended errors, including a failure to obtain a patient's informed consent—technically a "battery" at common law—in rendering treatment. Section 1089 was not intended to enlarge in any respect the limited waiver of the government's own sovereign immunity effected by the FTCA. *See Malpractice Protection to Defense Medical Personnel:* Hearings on S. 1395 and H.R. 3954 Before the Subcomm. on General Legislation of the Senate Comm. on Armed Forces, 94th Cong., 2d Sess. 68 (1976); S.Rep. No. 94–1264, 94th Cong., 2d Sess. 9 (1976), *reprinted in* U.S.Code Cong. & Admin.News 1976 at 4443, 4451. *See also Lojuk v. Quandt,* 706 F.2d 1456 (7th Cir. 1983) and *Lojuk v. Johnson,* 770 F.2d 619 (7th Cir.1985); *Baker v. Barber,* 673 F.2d 147 (6th Cir.1982); *Pelphrey v. United States,* 674 F.2d 243 (4th Cir.1982); *Hernandez v. Koch,* 443 F.Supp. 347 (D.D.C. 1978).

█ This Court concludes that it is without subject matter jurisdiction under the FTCA of the Bembenistas' claims, however ingeniously they have been pleaded as something else, for the "injury" represented by the sexual liberties taken with Mrs. Bembenista by WRAMC's medical technician. Those acts were indisputably the sort of "assault and battery" for which § 2680(h) saves the United States' sovereign immunity, and all "counts," or portions thereof, of the first amended complaint predicated upon them must be dismissed.

## II.

The first amended complaint also alleges, however, albeit collaterally, that Mrs. Bembenista was improperly medicated shortly before she was assaulted. Given too much insulin, it charges, Mrs. Bembenista suffered a hypoglycemic reaction and went into insulin shock, becoming semi-comatose and mentally confused, and, thus, helpless to comprehend the nature of or to protest the medical technician's intrusions of her body. Even if they are not allowed to recover for those offenses, the Bembenistas argue, they should nevertheless be entitled to proceed upon a conventional claim for medical negligence. The United States contends, however, that plaintiffs failed to "present" any such claim administratively as they were required to do as a condition precedent to suit. 28 U.S.C. § 2675(a).

█ The Court has before it the entirety of plaintiffs' voluminous administrative claim file, submitted to WRAMC by counsel on January 18, 1985, and accompanying their standard SF–95 forms by which FTCA claims are routinely initiated. Each of plaintiffs' SF–95 forms describes, as the "accident" for which claim is being made, only the "sexual assaults" on Joanne Bembenista. Counsel's letter of transmittal, which is in essence a brief in support of the claims, elaborates upon the SF–95's by describing Mrs. Bembenista's claim as one for "invasion of her privacy" (by the medical technician), for WRAMC's alleged "negligent retention and supervision" (of the technician), and for WRAMC's alleged breach of a "special duty of care" to provide a helpless patient with a "safe [therapeutic] environment." Mr. Bembenista's "derivative" claim, according to counsel, is said to be one for "loss of consortium" and "mental anguish." Nowhere in the documentation is there found an express allegation of medical negligence of any descrip-

---

6. The court distinguished *Andrews v. United States,* 732 F.2d 366 (4th Cir.1984), in which it had held consensual sex-as-"therapy" between a patient and a physician's assistant would sup-

port an FTCA action upon a theory of "negligent supervision" by the attending physician. *Andrews,* however, antedated the *Shearer* decision.

tion. If, as plaintiffs now contend, Mrs. Bembenista's reaction to the quantity of insulin administered to her was, in fact, the product of culpable medical error, the Bembenistas made no complaint of it to WRAMC, and virtually none here until it became expedient to do so to attempt to salvage the lawsuit.

Plaintiffs included Mrs. Bembenista's hospital record, totalling nearly 400 pages, as a part of their administrative claims without, however, alluding to it other than as support for their damage demands. They now point to various entries in the chart as indicating medication errors which could conceivably be viewed as malpractice, and they cite *GAF Corporation v. United States*, 818 F.2d 901 (D.C.Cir.1987) as establishing a "minimal-notice" rule with respect to administrative claims as a jurisdictional prerequisite to a suit under the FTCA, i.e., an adequate "presentment" to the agency need be nothing more than "a written statement sufficiently describing the injury to enable the agency to begin its own investigation ... and a sum-certain damages claim." *Id.* at 905. The hospital chart alone, they say, constituted notice to WRAMC that, in addition to the sexual assault claims, it could likewise anticipate, and should therefore have investigated, an impending malpractice claim as well.

The Court disagrees. In the absence of some explicit reference in the administrative claim to what plaintiffs thought WRAMC had done *medically* wrong to Mrs. Bembenista, and how she had been injured by it—and, in this respect the very prolixity of the remainder of the "presentment" on the subject of sexual assault diverts attention from any curiosity with respect to the quality of the medical care she received—the medical record serves as no notice at all of a potential malpractice claim. Fairly read, as it was, by military lawyers treating it as no more than an appendage to a meticulously developed claim of sexual assault, it reveals Mrs. Bembenista to have been a highly unstable chronic diabetic, with pre-existing emotional problems, whose condition made her vulnerable to what might otherwise have appeared an improbable sequence of events.

It gave no cause to the WRAMC lawyers and the judge advocate to investigate a possible malpractice action, and, of course, no such investigation was undertaken.

The Court concludes that the Bembenistas' administrative claim was an insufficient "presentment" under § 2675(a) to serve as the jurisdictional predicate for a claim of medical malpractice in the context of this case. *See Bush v. United States*, 703 F.2d 491, 495 (11th Cir.1983). Accordingly, to the extent the first amended complaint asserts such a claim, it, too, will be dismissed.

For the foregoing reasons, therefore, it is, this 12th day of January, 1988,

ORDERED, that defendant's motion to dismiss or for summary judgment is granted; and it is

FURTHER ORDERED, that the first amended complaint is dismissed with prejudice in its entirety.