Ronald L. ANDERSON, Appellee,

v.

Don H. O'DONOGHUE, M.D., an individual; John McCarroll, M.D., an individual; Drs. Greer, Carey, Zuhdi, Hawley and Hartsuck, Inc., an Oklahoma Corporation, and Saint Anthony's Hospital, an Oklahoma Corporation, Appellants.

No. 57812.

Supreme Court of Oklahoma.

June 28, 1983.

Rehearing Denied Sept. 12, 1983.

Alvin R. Leonard, Harbour, Leonard & Osborn, Kenneth R. Webster, McKinney, Stringer & Webster, Oklahoma City, for appellee, Ronald L. Anderson.

Calvin W. Hendrickson, Oklahoma City, for appellant, Don H. O'Donoghue, M.D.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., William S. Price, U.S. Atty., Oklahoma City, John G. Green, First Asst. U.S. Atty., Richard Freeman, Asst. U.S. Atty., William Kanter, Howard S. Scher, Attys., Appellate Staff Dept. of Justice, Washington, D.C., for appellant, John McCarroll, M.D.

George F. Short, Oklahoma City, for appellants; John M. Carey, M.D.; and Drs. Greer, Carey, Zuhdi, Hawley and Hartsuck, Inc.

HARGRAVE, Justice.

In the year 1978 the plaintiff, Ronald L. Anderson, consulted Dr. Don O'Donoghue for medical treatment for his knees. After more conservative treatment failed, the physician recommended surgical removal of cartilage from both knees. Plaintiff was admitted to St. Anthony Hospital. The following day surgery was performed. The surgical procedure on the right leg was successful with Dr. John R. McCarroll assisting. The operation on the left knee was performed by Dr. McCarroll at the request of Dr. O'Donoghue. During this procedure, Dr. McCarroll severed the popliteal artery and vein. The severance was discovered during the conclusion of the surgical procedure, and Dr. Carey was summoned to repair the severed vessels. After this procedure plaintiff exhibited no pulse in the leg but this was attributed to a spasm. An evening examination by Drs. Carey and McCarroll revealed no pulse in the leg again. The following morning, a

corrective procedure was undertaken, but gangrene had set in and as a result the left leg was amputated six inches above the knee.

After this case was filed in the District Court of Oklahoma County, the United States Attorney for the Western District of Oklahoma filed a petition for removal to the United States District Court for the Western District. This petition for removal was based on the fact that Dr. McCarroll was actively employed by the United States Navy from 1971 through 1980. The removal petition cited 10 U.S.C. § 1089(a). Under this statute it is alleged the plaintiff's exclusive remedy is under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2672. The United States District Court remanded the cause to state court. A second removal petition was then filed, citing 28 U.S.C. § 1447(d) resulting in a second remand by the Federal District Court. In state court McCarroll then challenged the state court's subject matter jurisdiction. The state tribunal rejected the immunity argument, citing the federal court's ruling as binding. Dr. McCarroll appeals solely from the state court's ruling that he was not statutorily immune from personal suit in this action.

The trial of the cause resulted in a jury verdict in favor of plaintiff in the amount of $925,000.00. The jury apportioned the liability 50% against Dr. Carey and his professional corporation and 50% against the two orthopedic surgeons, Drs. McCarroll and O'Donoghue. After the verdict, the court ruled there was no independent act of negligence on the part of Dr. O'Donoghue, and his liability arose from the doctrine *respondeat superior.* The court therefore ordered McCarroll to indemnify O'Donoghue for payments made by him in satisfying the judgment. Prior to trial, St. Anthony Hospital settled its liability for $70,000.00 and the court deducted this amount in calculating the judgment entered in the trial court.

Appellant O'Donoghue files a brief in this appeal supporting the judgment and has thus waived any allegations of error. Appellants Carey, M.D. and Drs. Greer, Carey, Zuhdi, Hawley & Hartsuck, Inc., filed a brief in which it is urged the trial court erred in failing to instruct the jury to apportion the percentage of negligence attributable to the actions of St. Anthony Hospital. Additionally, these defendants by Proposition Two of their briefs, affirm the trial court's ruling on the *in personam* jurisdiction of the state court over defendant McCarroll.

The primary issue presented by this appeal is the effect of 28 U.S.C. § 1089 on the jurisdiction of the state court in this medical malpractice action. Specifically the provision contained in § 1089(f) is at issue here:

"(f) The head of the agency concerned or his designee may, to the extent that he or his designee deems appropriate, hold harmless or provide liability insurance for any person described in subsection (a) for damages for personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a federal department, agency, or instrumentality, or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in Section 1346(b) of Title 28 [28 U.S.C. 1346(b)] for such damage or injury."

John R. McCarroll filed his brief in chief alleging in one proposition of error three separate bases for his holding the exclusive remedy for injuries caused by military physicians acting within the scope of their military duties is a suit under the Federal Tort Claims Act against the United States. The three legs of this proposition are: First, the previously quoted 10 U.S.C. § 1089(f) is not an exception to the immunity established by section (a). Second, appellant wishes this Court to follow, by analogy, the Federal Drivers Act and hold all physician-servicemen immune, conditioned only on the

fact that the actor had to have been acting within the scope of his employment. Thirdly, appellant contends that 10 U.S.C. § 1089 does nothing but direct that suit against a doctor in the armed service be brought against the United States as the proper defendant. In this regard, appellant refers to § 1089(a) which states:

"The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 for damages for personal injury, including death, caused by the negligent or wrongful act or omission of any physician ... of the armed forces ... while acting within the scope of his duties or employment ... shall hereafter be exclusive of any other action or proceeding by reason of the same subject matter against such physician ... whose act or omission gave rise to such action or proceeding."

The remedies spoken of in the preceding quote 28 U.S.C. § 1346(b) provide that claims against the United States must be brought in the United States District Court. The remaining statute, 28 U.S.C. 2672, provides the authority for the head of each federal agency to compromise and settle claims for money damages *against the United States*. It is noted in 28 U.S.C. § 1346(b) that the district court has "exclusive jurisdiction" over civil actions on claims against the United States.

■ Appellant's contention that § 1089(f), *supra,* does nothing but allow suit against the United States for a physician serviceperson's malpractice, is not borne out by the wording of the two subsections, § 1089(a) and § 1089(f). 10 U.S.C. § 1089(a) states the remedy against the "United States" shall be exclusive of any other civil action for the damage caused by the act or omission of the health practitioner. The statute clearly makes the federal government the defendant real party in interest. Contrarily, § 1089(f) speaks of individuals, using the word person. The language used there states the head of an agency may hold harmless any *"person"* described in subsection (a) when that person was acting within the scope of employ-

ment if that *"person"* is assigned to a foreign country *or* "detailed for service with other than a Federal department." The two subsections do not both speak to situations in which the United States is the party defendant, and that is apparent by examining the language of the statute.

■ The appellant was assigned, as subsection (f), *supra*, states, to other than a federal department. He was studying under a civilian specialist, working in a private hospital on a patient unconnected with the government and that patient was a private patient of the supervising doctor. The only other requirement necessary for application of subsection (f) is the military doctor must have been acting within the scope of his employment. There is no issue raised that presents a question of scope of employment. The parties and the exhibits are in agreement that the surgery performed upon plaintiff was within the scope of defendant's duties, which were, at the time, to study sports medicine under this supervising physician. We hold that under 10 U.S.C. § 1089(f) where scope of employment is established and the military physician is assigned to other than a federal agency, such as is the case here, the provision of the subsection allowing the head of any agency to hold harmless any person recognizes there is an exception carved from § 1089(a) allowing a party to bring an action against the military physician personally. Were this not true, subsection (f) would be a nullity for it allows the agency head to hold harmless or provide liability insurance "for any person." If this court held that under subsection (a) an action could not be brought personally against the physician where the requirements of subsection (f) are met, the entirety of subsection (f) would be rendered a nullity because there could be no suit against the military physician at all. Statutes must be construed to give meaning to each portion thereof and not so that a statute is rendered superfluous.

Appellant requests this Court to interpret 10 U.S.C. § 1089 consistently with the Federal Drivers Act, 28 U.S.C. § 2679, and

points to federal cases where that analogy is made. However, we find the more persuasive authority to be that of the 10th Circuit Court of Appeals which coincides with our analysis above. In *Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977), the last paragraph of the opinion states the statute, § 1089, was not intended to provide absolute immunity to armed forces physicians. The court spoke of the foreign service exception which is joined with the "other than federal service" exception with the disjunctive in *Jackson v. Kelly*, 557 F.2d 735, at 740, 741:

> "Granting defendant official immunity would not only make 10 U.S.C. § 1089(f) superfluous, it would also contravene one of Congress' aims in enacting section 1089(f) in its present form. Instead of granting military medical personnel practicing in foreign countries absolute immunity from suit for acts within the scope of their employment, Congress elected to have the government protect them through indemnification or insurance. The effect of this approach rather than absolute immunity is to ensure a remedy to victims of malpractice by military medical personnel assigned to a foreign country. If we were to grant official immunity to military medical personnel in foreign countries then malpractice victims would lose this remedy because the government's responsibility for damage claims under section 1089(f) is premised on the liability of military medical personnel in the first instance."

The case of *Jackson v. Kelly, supra,* makes it apparent that the 10th Circuit Court of Appeals has disapproved of the appellant's contention that 10 U.S.C. § 1089 affords absolute immunity to the military physician. *Jackson v. Kelly* has been cited in a case which presents the same issue as found in this appeal. In *Burchfield v. Board of Regents*, 516 F.Supp. 1301 (1981), the government contended § 1089 immunized military medical personnel from liability for medical malpractice. In that case plaintiffs were civilian employees of an arsenal alleging they were used as experimental subjects studied

for the effects of nerve gas poisoning. It was alleged the physicians conspired to prevent the plaintiffs from learning of this fact. Upon the filing of a motion to dismiss the court cited *Jackson, supra,* stating the immunity under § 1089, *supra,* would not apply if it was determined that the military physician was found to be detailed for service at other than a federal department, agency, or instrumentality and thus the motion to dismiss based upon § 1089, *supra,* was denied.

■ We hold that a suit against a military physician individually is proper where the facts disclose the case is brought under the conditions described in 10 U.S.C. § 1089(f), and that those facts are present under the record in this cause. Inasmuch as the suit may be brought against the physician individually, the action may properly be brought against the appellant in state court. The exclusive remedy in federal court provided for in 28 U.S.C. § 1346(b) relates to claims against the United States only.

■ The remaining issue on appeal relates to the settlement of St. Anthony Hospital's potential liability prior to trial and the effect of that event on subsequent proceedings. It is alleged the trial court erred in not instructing the jury it could apportion a percentage of the negligence causing the damage to St. Anthony Hospital. It is noted that there is no objection to the instruction as given, nor was an instruction offered by appellant Carey. Under such a circumstance, absent proper objections and notations required by statute, review on appeal is limited to erroneous statements of fundamental law appearing on the face of the instructions actually given. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okl.1981). In examining the instruction complained of for fundamental error, we note that the instruction as given stated that if the jury found the negligence attributable to both defendants, the percentage of negligence should be determined for each. No provision for apportionment was made for the defendant, St. Anthony's. The hospital had settled by the

time of trial. The trial judge properly deducted the amount of settlement from the verdict before arriving at the judgment amount. (12 O.S.1981 § 832 H. 1.) Oklahoma case law teaches that a faultless plaintiff may collect his whole judgment from either negligent defendant and the comparative negligence statute, 23 O.S. 1981 § 13, does not apply to such an action. *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613 (Okl.1980), *Berry v. Empire Indemnity Ins. Co.*, 634 P.2d 718 (Okl.1981). Thus, at the time of trial the Court's instruction was free of fundamental error as examined in the light of the authorities presented in the brief of the defendant Carey.

AFFIRMED.

SIMMS, V.C.J., and LAVENDER, DOOLIN, OPALA and WILSON, JJ., concur.

BARNES, C.J., disqualified.

HODGES, J., not participating.