Dear Honorable Brown,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Under the provisions of 7 O.S. 71 et seq. (1981), must a state agency which has vending facilities on its property allow a licensed blind vendor to operate those facilities when such vendor is available?
 2. May a state agency permit other vendors to operate facilities within an institution when such facilities compete directly with licensed blind vendors?
 3. May a state agency require payments other than those provided for in 7 O.S. 75 (1981), as a condition of a licensed blind vendor operating such facilities?
The provisions of 7 O.S. 71 — 7 O.S. 78 (1981) (hereinafter referred to as the act), address various aspects of the operation of vending facilities in public buildings by blind vendors.
7 O.S. 71 of the act authorizes the Oklahoma Public Welfare Commission, through that agency's Division of Visual Services, to "carry on activities to promote the employment of blind persons, including thelicensing and establishment of such persons as operators of vending facilities in public and other buildings." (Emphasis added).
7 O.S. 72 of the act provides in pertinent part, as follows:
"For purposes of this act and as used herein:
 "(a) The term `vending facility' means automatic vending machines, cafeterias, snackbars, cart services, shelters, counters, and such other appropriate auxiliary equipment which may be operated by blind licensees and which is necessary for the sale of newspapers, periodicals, confections, tobacco products, food, beverages, and other articles or services dispensed automatically or manually and prepared on or off the premises in accordance with all applicable health laws." (Emphasis added).
Finally, 7 O.S. 73 of the same act provides in pertinent part as follows:
 "It shall be the duty of the board of county commissioners of each county and the governing boards of all state institutions and agencies to give priority to the blind to operate facilities on the premises of county or state property under their respective jurisdictions. Such operators shall be licensed by the Oklahoma Public Welfare Commission, Division of Visual Services." (Emphasis added).
The resolution of your first question turns on the meaning of the phrase "give priority to" as used in 7 O.S. 73, supra.
In the absence of contrary definition of common words used in an act, the court must assume the legislature intended for them to have the same meaning attributed to them in ordinary and usual parlance. RiffePetroleum Co. v. Great National Corp., Inc., 614 P.2d 576, 579 (Okla. 1980).
Webster's dictionary defines "priority" as "the quality or state of being prior or antecedent in time; any preferential rating assigning rights to scarce products or materials, limited services . . .; something requiring or meriting attention prior to competing alternatives."Webster's Third New International Dictionary, pg. 1804 (1981).
Under the language of 7 O.S. 73, the governing board of a state agency has a duty to first offer the opportunity to operate a vending facility, as defined supra, to a qualified licensed blind vendor. If such licensed blind vendor is available, he or she must be allowed to operate the facility, for to interpret the statutory language otherwise would violate long standing principles of statutory construction requiring that each portion of an act be given meaning. Anderson v. O'Donoghue, 677 P.2d 648
(Okla. 1983). Moreover, this interpretation is consistent with the legislative history of Section 73, supra. When enacting the current provision, the legislature amended the section by striking a provision that blind vendors be permitted to operate "provided, that in the discretion of the Governing Board having control over such property, such vending stands may be properly and satisfactorily operated by blind persons in said locations[.]" 7 O.S. 73 (1937), amended by Laws 1978, c.127, 3.
In a like manner, your second question, relating to whether a state institution or agency may allow direct competition from other vendors, must be answered negatively. The fundamental objective of any exercise in statutory construction is to determine and give effect to the legislative intent. Hughes Drilling Co. v. Morgan, 648 P.2d 32 (Okla. 1982); Jacksonv. Independent School District No. 16 of Payne County, 648 P.2d 26
(Okla. 1982). The clear legislative intent of this provision is to "promote the employment of blind persons," 7 O.S. 71 supra. To allow other vendors to directly compete with qualified blind vendors would act to defeat such a purpose. Moreover, such direct competition would render the priority positioning discussed above ineffective.
It should be noted, however, that state agencies have broad discretion in the day to day management of their facilities. In such a role, they may determine that a certain number of vendor facilities are necessary to adequately serve a given building. Presuming that a qualified blind vendor is not available for each facility, the determination of whether or not another vendor is in direct competition with a qualified blind vendor would constitute a question of fact.
The resolution of your third question regarding the appropriate payments to be made by a licensed blind vendor requires an analysis of both existing and previously repealed statutory provisions.
7 O.S. 74 of the current act establishes the Adult Blind Commissary Fund "for the operation of the vending facility program and for thepayment of all other expenses heretofore payable from the Stand ConcessionRevolving Fund." 7 O.S. 74 (1981). (Emphasis added).
The "Stand Concession Revolving Fund" as established by the now repealed provisions of 7 O.S. 74 (1937), provided that monies contained within the fund "may be expended . . . for fixtures and equipment for vending stands operated by blind persons licensed by the said Commission, and for the purpose of providing initial stocks ofmerchandise and other working capital to such licensed operators." (Emphasis added).
7 O.S. 75 of the current act, the provision you cite in question number three, provides that "[a]ny such vending facility operator using fixtures and equipment purchased by the Oklahoma Public Welfare Commission shall be required to pay a rental or a service charge for the use thereof, and said Commission is hereby authorized to fix the amount to be paid by such operator. . . . Any such operator who is furnished an initial stock of merchandise by said Commission shall pay. . . ." 7 O.S. 75 then goes on to specify the appropriate payment schedule.
Read together, these provisions plainly address only the payment requirements to the fund for "fixtures," "equipment," and "initial stock of merchandise" provided pursuant to the provisions discussed above. As such, they may not be read as a restriction on the power of a state agency to require payments from a vendor, where that power exists.
It is perhaps instructive to note that 7 O.S. 73 (1937), now repealed, provided that the rent to be charged a licensed blind vendor by the appropriate governing board of an institution "shall in each instance be determined by mutual agreement between the Governing Board having control over such property and the Commission for the Adult Blind." This provision was in place concurrently with payment provisions similar to those discussed above. Prior to its amendment in 1978 (see Laws 1978, c.127, 3), the provisions of this act clearly, therefore, provided a process whereby rent was to be paid to the governing body of a state institution by a licensed blind vendor. The mere fact that such a process has been deleted by subsequent legislative action does not, however, operate to foreclose a state agency from receiving appropriate rental charges from a licensed blind vendor.
The 1978 amendments previously discussed did operate, however, to restrict the authority of state institutions and agencies regarding "new buildings" under construction or to be constructed after March 31, 1978. Title 7 O.S. 73 (1981), provides in pertinent part as follows:
 "Governing boards shall make available free, adequate space . . . in new buildings now under construction, and in any future buildings to be constructed, renovated or leased, in whole or in particle" (Emphasis added).
Moreover, it should be noted that while a state agency is not, by the terms of this act, precluded from charging a licensed blind vendor rent, in certain circumstances, as described above, such rent should be consistent with the legislative intent also discussed above. Within that intent, it would be appropriate for state agencies to charge licensed blind vendors equally with other vendors, but the agency could also appropriately charge blind vendors less than the rent required from other vendors providing equivalent services in order to promote the employment of blind persons.
It is, therefore, the official opinion of the Attorney General that:
 1. Under the provisions of 7 O.S. 71 et seq. (1981), a state agency having a vending facility or facilities, as that term is defined by 7 O.S. 72 (1981), on its property must allow a licensed blind vendor to operate such facility or facilities when such licensed blind vendor is available.
 2. Under the provisions of 7 O.S. 71 et seq. (1981), a state agency may not allow another vendor to compete directly with a licensed blind vendor. However, whether another vendor is in direct competition with a licensed blind vendor is a question of fact.
 3. The provisions of 7 O.S. 75 (1981), relate only to the payment for items enumerated therein and do not, standing alone, preclude a state agency from requiring other payments from a licensed blind vendor where that agency is otherwise authorized to do so.
 4. Pursuant to the provisions of 7 O.S. 73 (1981), for buildings under construction or to be constructed, renovated or leased on or after March 31, 1978, a state agency must make free, adequate space available to licensed blind vendors.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
WILLIAM BULLARD, ASSISTANT ATTORNEY GENERAL CHIEF, PUBLIC PROTECTION DIVISION