Mildred M. NEWMAN, and Melvin D. Newman, Plaintiffs–Appellants,

v.

Peter SOBALLE, M.D., Defendant–Appellee.

No. 87–6097.

United States Court of Appeals, Eleventh Circuit.

April 27, 1989.

Ashley Joel Gardner, Walter A. Oleniewski, Shulman, Rogers, Gandal, Pordy &

Ecker, Rockville, Md., for plaintiffs-appellants.

Dexter W. Lehtinen, U.S. Atty., Susan Hill Ponzoli, Asst. U.S. Atty., Miami, Fla., Nikki Calvano, Joanne R. Marvin, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before HATCHETT and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

The Newmans originally brought this malpractice suit against Dr. Soballe in the United States District Court for the Southern District of California alleging that Dr. Soballe, while acting within the scope of his duties as a military physician at the United States Naval Hospital in Okinawa, Japan, negligently failed to properly diagnose and treat two subcutaneous cysts in Mildred Newman's groin. As the wife of Lieutenant Commander Melvin Newman, United States Navy, Mildred Newman is entitled to military medical treatment. In Japan on November 21, 1984, Dr. Soballe performed an operation on Ms. Newman and this operation allegedly caused Ms. Newman unnecessary pain and injury. After the complaint was filed, Dr. Soballe represented to the California district court that he was a citizen of Florida, as are the Newmans, and moved to dismiss the action for lack of diversity or other federal jurisdiction.

On March 24, 1987, the Newmans refiled their complaint in Florida state court. The United States, on behalf of Dr. Soballe, then filed a petition for removal to federal court pursuant to 10 U.S.C. § 1089(c).[1]

---

1. 10 U.S.C. § 1089(c) states that

Upon a certification by the Attorney General that any person described in subsection (a) was acting in the scope of such person's duties or employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the

district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy

The government also moved to substitute the United States, in the place of Dr. Soballe, as the proper party defendant on the ground that 10 U.S.C. § 1089(a) prescribes that a federal tort claim against the United States under the Federal Torts Claims Act (FTCA) is the Newmans' exclusive remedy for Dr. Soballe's medical negligence.[2] The district court granted both of the government's motions and, over the Newmans' counter-motions, dismissed the action for lack of subject matter jurisdiction. The district court held that, pursuant to 10 U.S.C. § 1089, (the Gonzalez Act), the FTCA was the plaintiffs' exclusive remedy but that the FTCA specifically does not apply to torts arising in foreign countries (Order of Dismissal pp. 1–2).[3] This appeal follows and we find that the district court erred in holding that it had jurisdiction over the case because the plaintiffs' exclusive remedy was under the FTCA and then dismissing the case for lack of jurisdiction because the FTCA does not apply. It is obvious on the face of the statute, 28 U.S.C. § 2680(k), that "any claim arising in a foreign country" is not within the scope of the FTCA or 28 U.S.C. § 1346(b). Because the district court has no jurisdiction of the removal of the state court action under § 1346(b), it has no power to assume jurisdiction and then hold that the FTCA does not apply. Therefore, we reverse.

The issue in this case is whether the Gonzalez Act requires the substitution of the United States as a proper party defendant and thereby confers subject matter jurisdiction to federal courts when a non-member of the military alleges that a doctor employed by the United States Navy committed malpractice at an overseas hospital. If the Gonzalez Act confers such jurisdiction, federal courts would be forced to dismiss these overseas medical malpractice suits based on the United States' sovereign immunity under 28 U.S.C. § 2680(k). We need not address the constitutionality of such a scheme, because we decide that, under the facts of this case, the Gonzalez Act was never meant to immunize Dr. Soballe from personal liability or to leave Ms. Newman without a judicial remedy.

I. Subsection (f) of the Gonzalez Act Allows Suit Against Individual Medical Personnel in Certain Situations.

In the normal situation, a person injured by an employee acting within the scope of employment may sue either the employee, liable individually, or the employer, liable vicariously, for the injury sustained. By analogy, a party injured by a federal employee should be able to bring suit against the individual federal employee or against the United States as the employer. On the one hand, the FTCA is the statute that authorizes suit against the United States and, subject to certain exceptions, it does provide that the United States shall be liable in the same manner and to the same extent as a private individual in like circumstances. On the other hand, a new 1988 amendment to the FTCA and certain statutes such as the Gonzalez Act, generally immunize certain federal employees from personal tort liability and force a plaintiff to pursue a remedy only against the United States under the FTCA. *See, e.g.,* the Drivers Act, 28 U.S.C. § 2679, the Veterans Administration Act, 38 U.S.C. § 4116, and

by suit within the meaning of subsection (a) of this section is not available against the United States, the case shall be remanded to the State court.

**2.** 10 U.S.C. § 1089(a) states in pertinent part:
The remedy against the United States provided by sections 1346(b) and 2672 of title 28 for damages for personal injury ... caused by the negligent or wrongful act or omission of any physician ... of the armed forces ... in the performance of medical ... functions ... while acting within the scope of his duties or employment ... shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against

such physician ... whose act or omission gave rise to such action or proceeding.

**3.** 28 U.S.C. § 2680(k) provides that the provisions of the FTCA "shall not apply to—(k) Any claim arising in a foreign country." Neither party in this case contends that the alleged malpractice, occurring on a military base in Okinawa, Japan, did not "arise in a foreign country." *See Roberts v. United States,* 498 F.2d 520 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974) (negligence claim arising at Air Force base in Okinawa barred by foreign country exception to the FTCA).

the Foreign Relations Authorization Act, 22 U.S.C. § 2702. These immunity statutes, however, do not necessarily apply to every situation concerning a suit against a federal employee and careful consideration must be given to each statute to see whether it forces an injured party in a particular situation to seek redress only against the United States under the FTCA.

For example, the new amendment to the FTCA, enacted after the complaint in this case was filed, provides that whenever an individual United States employee is sued in common law tort for acts committed within the scope of employment, the exclusive remedy is against the United States. *See* Federal Employee Liability Reform & Tort Compensation Act of 1988, 1988 Amendment to 28 U.S.C. § 2679. This amendment, enacted to negate the recent Supreme Court decision of *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), is expressly designed to immunize from personal tort liability those federal employees not protected by other immunity statutes. *See* H.Rep. 100–700, 100th Cong.2d Sess. 2, U.S.Code Cong. & Admin. News 1988, p. 5945.

As a military physician, Dr. Soballe is specifically protected by the Gonzalez Act and is therefore not among those federal employees affected by the *Westfall* decision or the amendment. *Cf.* H.Rep. 100–700, 100th Cong.2d Sess. 4, 7, U.S.Code Cong. & Admin.News 1988, pp. 5947, 5950. More importantly, the amendment is part of the FTCA and only applies in situations where the FTCA itself would apply. The new amendment and subsection 2680(k) are both part of the same chapter of the FTCA, chapter 171. Subsection 2680(k) expressly holds that the provisions of chapter 171 shall not apply to claims arising in a foreign country. Because the Newmans' claim arises in a foreign country, the new

amendment does not apply to this case and we must look to the Gonzalez Act to resolve this case.

We agree with the government that the starting point in statutory interpretation is the language of the statute itself. *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). Thus, we begin our analysis by turning to the language of the Gonzalez Act. Subsection (a) provides that the remedy against the United States for military malpractice, when certain personnel are acting within the scope of their employment, shall be exclusive. Subsection (c) provides for the removal to federal court of a military medical malpractice action in state court upon certification by the Attorney General that the personnel sued was acting within the scope of employment when the tort was committed. Finally, subsection (f) authorizes the heads of agencies to indemnify or provide liability insurance for, among other things, medical personnel assigned to a foreign country.[4] The government argues that subsection (a) plainly grants blanket immunity to all military medical personnel regardless of where they are stationed and that subsection (f) applies only when personnel are assigned to a foreign country and suit is brought in that country's court system.

Where a statute is clear on its face, its plain meaning should be given effect without reference to legislative history. *James*, 478 U.S. at 606, 106 S.Ct. at 3122. The Gonzalez Act, however, is far from clear. While subsection (a) "plainly" states that an action against the United States is to be exclusive, subsection (f) "plainly" states that a *person* under subsection (a) may be held harmless or provided liability insurance if, among other things, that individual is assigned to a foreign country.

---

**4.** Subsection (f) provides:

The head of the agency concerned may, to the extent that the head of the agency concerned considers appropriate, hold harmless, or provide liability insurance for any person described in subsection (a) for damages or personal injury, including death, caused by such person's negligent or wrongful act or omission in the performance of medical, den-

tal, or related health care functions … while acting within the scope of such person's duties if such person is assigned to a foreign country or detailed for service with other than a Federal Department, agency, or instrumentality or if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury.

Thus, while subsection (a) anticipates actions against the United States, subsection (f) anticipates actions against the individual. In reading the statute as a whole, as we are required to do, *Carchman v. Nash*, 473 U.S. 716, 743 n. 11, 105 S.Ct. 3401, 3415 n. 11, 87 L.Ed.2d 516 (1985), we find that these two subsections create an ambiguity and we therefore look to the legislative history for guidance.

The legislative history does state that the purpose of the Gonzalez Act is to protect certain medical personnel from individual liability. It appears, however, that Congress did not contemplate that both stateside and foreign personnel would enjoy the same form of protection under the Act. The legislative analysis of this statute is revealing:

> Subsection (a) of the new section 1089 makes the remedy against the United States provided by 28 USC 1346(b) and 28 USC 2672 the exclusive remedy for damages arising from medical malpractice by certain U.S. medical personnel.... [The FTCA] makes the United States liable, under the local law of the place where the tort occurred, in the same manner and to the same extent as a private individual under like circumstances.... Suits for damages for personal injury against such medical personnel in their individual capacities are precluded. The sole remedy would be against the United States.
>
> . . . .
>
> Subsection (f) would authorize the appropriate Secretary to hold harmless or provide liability insurance for medical personnel described in subsection (a). The purpose of this section ... is to avoid liability being assessed against an individual medical personnel in a situation where the [FTCA] would not be applicable. *The [FTCA] does not apply to actions arising in a foreign country....* Subsection (f) authorizes the appropriate Secretary to provide protection through indemnification or insurance to

medical personnel in those situations. S.Rep. No. 94–1264, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News pp. 4443, 4450–51 (emphasis added).

The analysis of subsection (a) states that the sole remedy for specified torts committed by certain medical personnel is a suit against the United States. Further along, however, the analysis clearly provides that subsection (f) allows such medical personnel, described in subsection (a), to receive indemnification or insurance when, among other things, that personnel is assigned to a foreign country. The only logical reading of this statute is that malpractice committed by stateside medical personnel is defended by the United States through its substitution as the proper party defendant, while malpractice committed by military personnel stationed abroad is defended by the individual with the United States providing indemnity or insurance.

The legislative history of subsection (e) offers further support for this interpretation.[5] The Senate Report states:

> Subsection (e) would nullify a provision of the [FTCA] which would otherwise exclude any action for assault and battery from the coverage of the [FTCA]. In some jurisdictions it might be possible for a claimant to characterize negligence or a wrongful act as a tort of assault and battery. *In this way, the claimant could sue the medical personnel in his individual capacity notwithstanding subsection (a)* simply as a result of how he pleaded his case.

S.Rep. No. 94–1264, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News p. 4451 (emphasis added).

As the legislative history demonstrates, Congress believed that the immunity conferred by the "exclusive remedy" language of subsection (a) was limited to the reach of the FTCA and that where the FTCA did not extend, military physicians would continue

---

**5.** 10 U.S.C. § 1089(e) states:

For purposes of this section, the provisions of section 2680(h) of Title 28 shall not apply to any cause of action arising out of a negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations).

to be susceptible to personal suit and would be liable for malpractice judgments rendered against them as individuals. Thus, Congress enacted subsection (f) to protect, through indemnity or insurance, those personnel who lacked immunity under subsection (a) of the Gonzalez Act the FTCA, by virtue of 28 U.S.C. § 2680(k), (*see infra* n. 3), did not extend jurisdiction in their situation.[6]

The government points out that there are already several statutory schemes where plaintiffs are closed off from recovery under the FTCA. Although these statutory schemes do not apply because Ms. Newman is neither a federal employee nor a member of the military, the government inexplicably argues that they are comparable to the situation at bar.[7] Most notably, under the Drivers Act, 28 U.S.C. § 2679, a federal employee injured by another employee who is covered under the Drivers Act, is limited to Federal Employee Compensation benefits when the United States is substituted as a proper party defendant. *See, Vantrease v. United States*, 400 F.2d 853 (6th Cir.1968). Likewise, the government points out that military plaintiffs are already barred from bringing malpractice suits against military physicians under the *Feres* doctrine.[8] *See Gaspard v. United States*, 713 F.2d 1097 (5th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); *Ocello v. United States*, 685 F.Supp. 100 (D.N.J.1988) (United States must be substituted under the Gonzalez Act even if the *Feres* bar prohibits recovery); and *Bass v. Parsons*, 577

F.Supp. 944 (S.D.W.Va.1984) (Gonzalez Act subsection (f) meant to protect military doctors against civilian suits and thus statute does not abrogate the *Feres* doctrine). The government argues from these situations of limited recovery that it is not unimaginable or necessarily shocking that Congress might have left civilian plaintiffs with the limited avenue of filing a claim with the appropriate administrative agency under the Military Claims Act when the malpractice occurs overseas.[9]

The Military Claims Act empowers the "Secretary concerned" to "settle and pay" meritorious claims in an amount of up to $100,000 against the United States for, among other things, personal injury or death caused by military employees while acting within the scope of employment in noncombat activities. In addition, the Secretary is to report any meritorious claim in excess of $100,000 to the Comptroller General for payment. *See* 10 U.S.C. § 2733 (1983 & Supp.1988). The Military Claims Act is merely an authorization statute. It confers no "cause of action" to the plaintiff and it does not distinguish between military claimants and nonmilitary claimants. *Cf. Towry v. United States*, 459 F.Supp. 101, 105 (E.D.La.1978), *aff'd*, 620 F.2d 568 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981) (Military Claims Act does not create a right of action in plaintiff to pursue judicial remedy). Eliminating remedies for those who work for the government is a different situation from eliminating the remedies of the population at large.[10] Furthermore,

---

6. While we recognize that witness testimony given during congressional hearings should be accorded little weight, *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), we do note that, read as a whole, the hearings held for the Gonzalez Act support the interpretation that subsection (a) is not meant to operate in those situations where the FTCA is inapplicable by its own provisions. *See, e.g.,* Hearings Before the Subcommittee on General Legislation of the Committee on Armed Services, United States Senate, 94th Cong., 2d Sess. on S.1395 and H.R. 3954 (Mar. 2, Aug. 27, and Sept. 10, 1976); Hearings on H.R. 3954 Before the Subcommittee on Military Personnel of the Committee on Armed Services, House of Representatives, 94th Cong. (June 5, and June 17, 1975).

7. As of yet, there appears to be no litigation over the most analogous statute to the Gonzalez Act, the Foreign Relations Authorization Act, 22 U.S. C. § 2702.

8. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

9. In this case, the plaintiffs filed a claim with the Military Board but their claim was denied.

10. Because the Military Claims Act does not confer any cause of action to nonmilitary claimants as a substitute for a judicial remedy, we believe the dissent's resolution of this case has constitutional implications. In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), the Supreme

the Military Claims Act does not state that it provides the exclusive avenue for recovery in situations such as the one at bar. Indeed, the fact that Congress even enacted the Gonzalez Act belies such an interpretation. We therefore distinguish the above situations from the one at bar.

We also note that the allegedly analogous statutes relied on by the government do not have the equivalent of subsection (f). Thus, the cases interpreting these statutes do not aid us in our analysis under this subsection. For example, in *In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982 (9th Cir.1987), *cert. denied*, ── U.S. ──, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988), the district court allowed substitution of the United States for certain contractors pursuant to 42 U.S. C. § 2212, a statute similar to the Gonzalez Act but without an equivalent of subsection (f). The district court then dismissed the suit for several reasons including the FTCA foreign country exception. On appeal, the Ninth Circuit affirmed without reaching the propriety of dismissal pursuant to this exception. Unlike 42 U.S.C. § 2212, the Gonzalez Act has a subsection that provides for the indemnification of military personnel assigned to a foreign country. Because subsection (f) was written into the Gonzalez Act, we are required to give it meaning.

Cases of several other circuits support our position. For instance, in *Jackson v. Kelly*, 557 F.2d 735 (10th Cir.1977), a patient brought a malpractice suit against an air force physician who had treated her in England for a condition related to pregnancy. In denying the physician the protection of official immunity, the Tenth Circuit looked to the newly enacted Gonzalez Act:

> The purpose of [subsection (f) ] is to provide a method for the assumption by the government of responsibility for damage claims against its military medical personnel arising from medical care given in foreign countries in the scope of their employment. Behind it is the desire to protect military medical personnel from the ever-present danger of personal liability ... while preserving a means for compensating malpractice victims for their injuries.
>
> ... Instead of granting military medical personnel practicing in foreign countries absolute immunity from suit for acts within the scope of their employment, Congress elected to have the government protect them through indemnification or insurance. The effect of this approach rather than absolute immunity is to ensure a remedy to victims of malpractice by military medical personnel assigned to a foreign country.

*Id.* at 740–41 (citation omitted).

Likewise, the Fourth Circuit in *Pelphrey v. United States*, 674 F.2d 243 (4th Cir. 1982) rejected the idea that subsection (a) provides absolute immunity for all military physicians regardless of whether they are assigned stateside or abroad:

> Whereas military medical personnel acting within the United States are immune from personal liability because the FTCA is the *exclusive* remedy for military medical malpractice arising in the United States, military medical personnel acting in a foreign country are personally liable for malpractice because the FTCA does not apply to "any claim arising in a foreign country." Thus, the need for special protection by [sic] foreign based medical personnel stems from the very fact that malpractice claims against them are exempt from the FTCA.

*Id.* at 246 (citation omitted).

Other case law interpreting the Gonzalez Act is somewhat divided. For example,

---

Court held that "a cause of action is a species of property protected by the ... Due Process Clause." Thus, having made access to the courts for traditional actions such as tort or discrimination an entitlement or necessity, the government "may not deprive someone of that access unless the balance of [governmental] and private interests favor the government scheme." 455 U.S. at 430 n. 4, 102 S.Ct. at 1154 n. 5.

Because we find that the Gonzalez Act does not deprive Ms. Newman of the right to sue in a United States' court, we need not undertake this constitutional inquiry. We note, however, that were we to adopt the dissent's position that the Gonzalez Act deprives Ms. Newman of any meaningful remedy, we would be forced to address the constitutionality of such a scheme.

both the government and the appellants point to different California district court cases that support their respective positions. *See Smith v. Marshall, Jr. M.D.,* No. CV 87–5477 (C.D.Cal., Jan. 11, 1988) and *Merdith v. Benler, M.D.,* No. CV 85–1963–KN (Mcx) (C.D.Cal., Feb. 29, 1988). Confusion over this statute, however, is not limited to the California district courts. The Fifth Circuit in *Powers v. Schultz,* 821 F.2d 295 (5th Cir.1987) reached the exact opposite conclusion from the one we reach today. In *Powers,* the Fifth Circuit found the language of subsection (a) dispositive in light of the legislative intent to protect military medical personnel by providing an "exclusive remedy." The *Powers* court also relied on *Jones v. Newton,* 775 F.2d 1316 (5th Cir.1985) to support its conclusion and indeed the *Powers* court quoted, "[t]he meaning of [Section 1089(a)] is clear: for the causes designated, a suit against the United States is the only remedy against the physician. When suit falls within these designated causes and there can be no recovery against the United States, the plaintiff has reached the end of the line." *Powers,* 821 F.2d at 298. *Jones,* however, was speaking to a entirely different set of circumstances. In *Jones,* the party injured was a serviceman and the serviceman was injured *in the United States* by a physician assigned to a military hospital *in the United States.* Thus, Jones's circumstances fell squarely within the jurisdiction of the FTCA and therefore within subsection (a) of the Gonzalez Act. In addition, Jones attempted to remand the case against the physician to the state court only *after* an identical case, brought against the United States, had been dismissed on a finding of no liability. *Jones,* therefore, is clearly inapposite to the present situation.

Finally, the *Powers* court noted that "[t]here is no real quarrel on appeal with the substitution of the United States as party defendant...." *Id.* at 296. In contrast, the appellant in this case argues adamantly that the United States was improperly substituted as the party defendant and it is this argument that we find meritorious. As we stated above, the legislative history, taken as a whole, evidences a desire to protect military physicians by providing that the FTCA is the exclusive remedy where the FTCA extends jurisdiction, and by providing indemnification or insurance where the FTCA, by its own provisions, does not apply.

## II. Subsection (f) is not Limited to Suits Brought in Foreign Courts.

Because the legislative history and subsection (a) evince a purpose to protect military physicians from liability by providing an exclusive remedy, the Fifth Circuit, in *Powers,* read subsection (f) as encompassing only those suits filed in the court systems of foreign countries.

> Medical malpractice occurring in a military facility in a foreign country is potentially actionable both in the United States and the foreign country. Section 1089 obviously can provide protection only for the suits brought in courts in the United States. The Act recognizes this fact and authorizes the procurement of liability insurance to protect military physicians against suits filed in the court systems of foreign countries.

*Powers,* 821 F.2d at 297. The government, relying on *Powers* and on *Heller v. United States,* 776 F.2d 92 (3d Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986), would have us reach the same conclusion and find that subsection (f) is meant to operate only when the personnel is assigned to a foreign country, "and the suit is brought in a foreign court." We simply do not find this added qualification in the statute. The statute itself does not contain this "extra" phrase and nothing in the legislative history indicates that Congress meant to limit subsection (f) to suits in foreign courts.

As noted above, *Powers* is simply unpersuasive. In addition, *Heller* is wholly distinguishable. In *Heller,* a suit was brought by a serviceman for the wrongful death of the serviceman's wife following treatment at an air force base hospital in the Philippines. Because Heller could not effect process against the individual medical employees, the case was brought only

against the United States. In an attempt to circumvent the dismissal of his suit based on the foreign country exception to the FTCA, the plaintiff argued that the indemnification provisions of subsection (f) of the Gonzalez Act constituted an implied waiver of the United States' sovereign immunity. Thus, Heller argued, the United States was exposed to primary liability for a claim of medical malpractice arising in a foreign country. Rejecting this argument, the Third Circuit correctly held that subsection (f) merely "authorizes the Secretary of Defense to provide protection, either through indemnification or insurance, to foreign-based military personnel who are subject to personal liability," and is "not a grant of jurisdiction...." *Id.* at 97–98. The Third Circuit in *Heller* never addressed a physician's susceptibility to suit in the physician's individual capacity pursuant to the Gonzalez Act.

Indeed, the government's argument, that subsection (f) was meant only to apply to suits brought in foreign countries, falls apart when we consider that subsection (f) also provides indemnity or insurance for those military medical personnel who are "detailed for service with other than a federal department, agency, or instrumentality...." [11] Likewise, subsection (f) provides indemnity or insurance "if the circumstances are such as are likely to preclude the remedies of third persons against the United States described in section 1346(b) of title 28, for such damage or injury." This clause applies directly to the facts of this case. Mrs. Newman and her husband, Lieutenant Commander Newman,

have returned to the United States, as has Dr. Soballe. Requiring the Newmans to return to Okinawa to bring suit could, by its very expense, "preclude" Mrs. Newman's remedy described in Section 1346(b). There is no practical sense in requiring a civilian to bring a suit in a foreign court for malpractice that occurred overseas when both the civilian and the physician reside in the United States at the time the complaint is to be filed. [12]

In fact, the Oklahoma Supreme Court in *Anderson v. O'Donoghue*, 677 P.2d 648 (Okl.1983) retained jurisdiction over a malpractice suit where the military physician committed malpractice while on civilian assignment. The court specifically held "that a suit against a military physician individually is proper where the facts disclose the case is brought under the conditions described in [subsection (f)].... Inasmuch as the suit may be brought against the physician individually, the action may properly be brought against the appellant in state court." *Id.* at 652. The court reached its decision by noting that: "[i]f [we] held that under subsection (a) an action could not be brought personally against the physician where the requirements of subsection (f) are met, the entirety of subsection (f) would be rendered a nullity because there could be no suit against the military physician at all." *Id.* at 651.

We also note that, regardless of whether a claim is brought in a foreign court or in a United States court, the named parties may be subject to foreign law because, in the

---

**11.** The dissent argues that "subsection (f) can only encompass suits filed in a foreign country's judicial system.... Congress created subsection (f) to provide liability insurance, the only protection possible, for military physicians, in suits in foreign courts." *Infra* at 979 (citation omitted). Like the *Powers* court, the dissent fails to explain subsection (f) in its entirety. Besides providing indemnity or insurance for military medical personnel assigned overseas, subsection (f) also provides indemnity or insurance for military medical personnel detailed for service with other than a federal department or if the circumstances are such as are likely to preclude remedies under the FTCA. Surely a plaintiff injured in a United States private hospital by a military physician need not bring an

action in a foreign court before that plaintiff could rely on the provisions of subsection (f). Nothing in the wording of the statute leads us to believe that Congress meant subsection (f) to operate differently depending on whether the physician sued was "assigned to a foreign country" or "detailed for service with other than a federal department." In either case, suit may be brought in the United States.

**12.** When the allegedly negligent physician returns from the overseas base to the United States, the dissent's solution requires that the plaintiff physically move the doctor back to the foreign base in order to litigate the malpractice claim. Such a "solution" is no solution at all.

United States, a court generally applies the tort law of the place in which the tort was committed.[13] Thus, it makes no practical difference for the United States to indemnify those claims brought in a foreign court but not those brought in a United States court. In either situation the United States may very well be subjected to the cost of recovery as determined by foreign law.

This rationale does not create an exception in the Gonzalez Act that abrogates the United States' foreign country immunity under the FTCA. Under the Gonzalez Act's scheme, the United States is not subjected to the foreign court's *jurisdiction* and no foreign sovereignty may render a judgment against the United States. Rather, the United States has, by statute, agreed to pay out judgments rendered against its medical employees in certain situations. While this distinction may seem semantical, under the Gonzalez Act, the United States is only indirectly liable for the cost of recovery; it neither submits to foreign jurisdiction nor subjugates itself to a foreign sovereignty.

Furthermore, it is illogical to think that the United States would be willing to pay out claims for malpractice suits filed in the United States when the military physician is stationed stateside, and willing to pay out claims for suits filed in a foreign country when the physician is stationed overseas, but would be unwilling to pay out those same claims if filed in the United States when the physician acted while assigned overseas. There is no practical reason for distinguishing between suits brought in the United States and suits brought in a foreign country and we do not read such a distinction into the statute.

### III. Conclusion

Our opinion today should not cause a disincentive for military physicians to practice abroad. Although these doctors will have the uncomfortable burden of being a defendant in a trial and perhaps of fronting court costs, they will ultimately be protected to the same extent as their stateside counterparts. Although subsection (f) provides that the heads of agencies "may" indemnify or provide insurance, the technical analysis of the House version of the Gonzalez Act is reassuring:

> [T]his subsection should allow the Secretary of Defense to complete the protection against personal liability in all appropriate respects. Indeed, the third condition appears to be susceptible of interpretation by itself to cover any situation in which the individual is sued but suit under the [FTCA] is not available. The administrative discretion which it authorizes would presumably be limited by the usual rules against arbitrary and capricious action.

Hearings on H.R. 3954 before the Subcommittee on Military Personnel of the Committee on Armed Services, House of Representatives, 94th Cong. (June 5, and June 17, 1975) p. 28.[14] In addition, we note that in the SECNAV Instruction 6300.3, JAG: 14C (March 14, 1978), the Secretary of the Navy has already exercised the authority to indemnify *all* personnel coming within the parameters of subsection (f).

Finally, we note that subsection (c) allows for remand when "a remedy within the meaning of subsection (a) is not available." We disagree with the government that this section only contemplates remand when the military medical personnel was not acting within the scope of employment at the time the tort occurred. Again, the legislative history makes the language of subsection (c) clear: "If a district court remands the case upon a determination

---

**13.** Rule 44.1 of the Federal Rules of Civil Procedure empowers federal courts to determine and apply the laws of foreign countries.

**14.** Also, while we disagree with the conclusion in *Heller v. United States*, 605 F.Supp. 144 (E.D. Pa.), *aff'd*, 776 F.2d 92 (3d Cir.1985), *cert. denied*, 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986) that suits under subsection (f) must be brought in a foreign court, we agree with

much of the district court's analysis. For instance, on the use of the word "may" in subsection (f) the district court commented: "I believe that Congress granted discretion to the agency head only to preclude the government from being held as an insurer or indemnitor in baseless lawsuits and to give it the authority to evaluate claims." *Id.* at 148.

that a remedy by suit under the [FTCA] would not be available against the United States, the protection available to medical personnel is set forth in subsection (f)." S.Rep. No. 94–1264, 94th Cong., 2d. Sess. 2, *reprinted in* 1976 U.S.Code Cong. and Admin.News 4451. In any event, the district court lacks federal jurisdiction over this removed case and must therefore remand it to state court pursuant to 28 U.S.C. § 1447(c). The district court judgment is REVERSED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision instructing the district court to remand the action to the state court. Based on the Gonzalez Act's language and the congressional scheme for immunizing armed forces medical personnel from personal liability, I would affirm the district court's exercise of jurisdiction and subsequent dismissal under the sovereign immunity doctrine. My position is: this plaintiff has no cause of action against this armed forces physician in a court in the United States.

The majority concludes that the district court lacked jurisdiction over the Newmans' claim because such claim fell outside of the Federal Torts Claims Act (FTCA). I concede that the FTCA does not apply to the Newmans' claim because it arose in a foreign country. The district court had jurisdiction to dismiss the claim.

Congress enacted the Gonzalez Act to immunize armed forces medical personnel from civil suit and personal liability for negligent acts performed in the scope of their employment. H.R.Rep. No. 333, 94th Cong.2d Sess. 2 (1976). To accomplish this goal, subsection (a) of the Act makes a suit against the United States the exclusive remedy for such malpractice:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 for damages for personal injury ... caused by the negligent or wrongful act or omission of any [armed forces] physician ... in the performance of medical ... functions ... while acting within

the scope of his duties or employment ... shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician ... whose act or omission gave rise to such action or proceeding.

10 U.S.C.A. § 1089(a) (West Supp.1988). The majority creates an exception to this exclusivity rule by allowing suits against medical personnel when the injured party cannot sue the United States under the FTCA.

Neither the Act's language nor its sole purpose of immunizing medical employees from liability for negligent acts committed within the scope of such individuals' duties supports such an exception. First, subsection (a), quoted above, does not expressly create any exceptions. Second, the legislative history fails to discuss any exceptions to the exclusivity rule. According to the Senate report, the purpose of the Act is as follows: "In short, defense medical personnel would be immunized from malpractice suits." S.Rep. No. 94–1264, 94th Cong.2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News 4443. The Senate report further states that the Senate Armed Services Committee recommended the Act "to provide an exclusive remedy against the United States in suits based upon medical malpractice on the part of military or civilian medical personnel of the armed forces...." S.Rep. No. 94–1264, 94th Cong.2d Sess. 1 (1976), U.S.Code Cong. & Admin.News 1976, p. 4443.

Finally, other circuits' decisions have refused to interpret the Act as allowing a suit against an individual simply because the United States is immune from suit. For example, the Fifth Circuit stated:

The meaning [of section 1089(a) ] is clear: for the causes designated, a suit against the United States is the only remedy against the physician. *When suit falls within these designated causes and there can be no recovery against the United States,* the plaintiff has reached the end of the line.

*Jones v. Newton,* 775 F.2d 1316, 1318 (5th Cir.1985). The Sixth Circuit has similarly held that the Gonzalez Act bars a federal

employee's suit against an armed forces physician even though the Federal Employee Compensation Act precludes such employee from recovering against the United States under the FTCA. *Baker v. Barber*, 673 F.2d 147, 148–49 (6th Cir.1982).

The majority, however, concludes that sections 1089(c) and (f) demonstrate Congress's intent to allow a party to sue armed forces medical personnel when the FTCA does not apply. I disagree. Subsection (c) serves two functions. Initially, subsection (c) implements the exclusivity provision by requiring the removal of state court actions to a federal district court and the substitution of the United States as the sole defendant if the alleged negligence occurred in the scope of the medical person's duties. 10 U.S.C.A. § 1089(c) (1983).

In addition, subsection (c) contains a limited remand provision:

[If] a United States district court determine[s] on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which *a remedy by suit within the meaning of subsection (a) of this section is not available against the United States* the case shall be remanded to the State Court. [Emphasis added.]

10 U.S.C. § 1089(c) (1983). Contrary to the majority's interpretation, this provision does not require a remand if the individual cannot ultimately recover against the United States; permitting a remand under such circumstances would undermine the Act's purpose of providing immunity to the medical personnel. *See Powers v. Schultz*, 821 F.2d 295, 298 (5th Cir.1987) (no remand under subsection (c) even though foreign country exception to FTCA precludes recovery against United States). Rather, this provision requires a remand only when the plaintiff's complaint does not aver a cognizable cause of action under section 1089(a). *See Powers* 821 F.2d at 298. Under section 1089(a), a cause of action exists for claims of personal injury resulting from a military physician's negligence in the scope of such physician's duties. Because Dr. Soballe is an armed forces physician whose alleged negligence occurred in the performance of his duties as a military physician, a section

1089(a) cause of action exists; and therefore, the district court properly refused to remand the case.

Turning to subsection (f), the majority concludes that this subsection indicates that Congress did not intend subsection (a) to apply when the FTCA does not apply. Subsection (f) provides for liability insurance to cover military medical employees' negligent actions performed within the scope of such employees' duties in a foreign country. The majority interprets this provision as allowing suits against medical personnel in United States courts for medical malpractice occurring in foreign countries.

Given the Act's purpose of immunizing medical personnel, subsection (f) can only encompass suits filed in a foreign country's judicial system. *See Powers*, 821 F.2d at 297. Medical malpractice occurring in a military facility in a foreign country is actionable in the United States and the foreign country. Obviously, Congress cannot immunize such employees in foreign countries from suit in foreign courts. Therefore, Congress created subsection (f) to provide liability insurance, the only protection possible, for military physicians, in suits in foreign courts. *Powers*, 821 F.2d at 297.

Because Congress clearly intended to immunize medical personnel from suit in the United States courts, we must construe subsection (f) narrowly, as only serving the necessary function of covering employees where Congress could not immunize them. Furthermore, interpreting the Act to allow suits for foreign malpractice would lead to an anomalous result because an injured party cannot sue military medical employees in a United States court for alleged negligence committed in the performance of their medical duties in the United States. *See* 10 U.S.C. § 1089(a). I cannot believe that Congress intended to throw armed forces medical personnel stationed in foreign countries to the wolves while protecting similarly situated domestic personnel. Accordingly, I dissent.